## 33879. COLLINS v. THE STATE.

NICHOLS, Chief Justice.

Roger Collins was tried by a jury in Houston County for the rape and murder of Deloris Luster. He was convicted of both offenses and was sentenced to death for

the murder and fifteen years imprisonment for the rape. He is before this court on direct appeal and for mandatory review of the death sentence imposed upon him.

There was evidence admitted that would authorize the jury to find the following:

During the night of August 6, 1977, Roger Collins, William Durham and Johnny Styles were drinking and carousing. While the three companions were sitting around drinking and talking, Durham jumped up and said three times that he loved to kill.

Later the same night, they saw Deloris Luster getting out of an automobile. Collins called her over to the car in which they were riding and asked her to engage in sexual intercourse. She declined but accepted an invitation to drive her home. Instead of taking her home, Durham drove them around for awhile, engaging in various acts of reckless driving which finally resulted in the automobile's muffler being knocked off.

Durham stopped the automobile to check the damage, and he and Collins conversed for a few moments out of Styles' hearing. Upon their return, Styles asked Durham what he and Collins had been talking about. Durham replied that they were going to have sexual relations with Deloris Luster.

After they got back in the car with Durham driving, they drove to a pecan orchard and stopped at the gate. Deloris Luster asked why they had stopped, but they did not answer. Durham opened the gate, drove in, and closed the gate. She told Durham that she was two months pregnant and had a venereal disease. Collins told her that if he caught the disease, he was going to do something to her. After Durham turned the car around, he got out and grabbed her, snatching her out of the car. Durham started to remove her clothes, but she proceeded to remove them while Collins removed the back seats from the car. While Durham, who was brandishing a knife, and Styles waited nearby, Collins had sexual intercourse with her. She was screaming and saying, "Why me!"

When Collins finished with her, Durham ordered Styles to have intercourse with her. Styles pretended intercourse for about two minutes. Durham told her that if she didn't stop screaming, he was going to use the knife

to "rip her damn heart out." Durham stuck the knife beside her head, slapped her in the face and proceeded to have intercourse with her. Durham then forced Styles to have intercourse with her again. Styles heard Durham ask Collins, "Is there anything else that you want to do to her because won't nobody else, won't nobody else see her no more, won't nobody else get no more of this . . . "

Durham took her hand and led her up the dirt road into the pecan orchard with Collins following. She said, "Y'all going to kill me, ain't you?" Collins stopped, went back to the car, opened the trunk and removed the jack. Armed with the jack, Collins followed Durham and Deloris Luster. Moments later, Styles heard "about three licks." Collins returned to the car, followed by Durham, "joking each other." Durham was carrying the jack which was bloody all over. Collins had blood on his feet and instructed the others that if anyone asked how the blood got on them, they should say that he had cut his feet earlier that day. Styles gathered Deloris Luster's clothes and the three left. Styles heard Collins say to Durham, "Hey, man, you didn't think I was going to hit her up' side the head too." As they were leaving, Collins told Styles that he had killed so many people he could not remember how many.

The jack was thrown alongside the road in two pieces. When recovered, it was covered with blood and hair. A latent fingerprint left on the jack was positively identified as the right thumbprint of Collins.

At daybreak, Styles reported these matters to the police. The body was located, and later in the day, Collins and Durham were arrested and given Miranda warnings.

That afternoon Collins again was advised of his rights but did not make a statement. Later that evening, after once more being advised of his rights, he made a statement in which he admitted that he had picked up the victim under the pretext of carrying her home, and that he had instead carried her to a pecan orchard, accompanied by Durham and Styles, where he and the others had raped her. He admitted also that afterward he hit her in the head with a jack and then gave the jack to Durham.

Death resulted from massive head injuries caused by multiple blows of great force. Sperm was found in the

victim's vagina and rectum.

1. In his first enumeration of error, Collins contends that Code Ann. § 59-806 (4), allowing prospective jurors to be asked on voir dire whether they are conscientiously opposed to capital punishment, denies him an impartial jury in violation of the Sixth and Fourteenth Amendments.

This issue has been raised numerous times before this court, and in each instance this court has ruled that the asking of the question does not violate constitutional guarantees under the State and Federal Constitutions. *Abrams v. State,* 223 Ga. 216 (13) (154 SE2d 443) (1967); *Clarke v. Grimes,* 223 Ga. 461 (4) (156 SE2d 91) (1967); *Jones v. State,* 224 Ga. 283 (2) (161 SE2d 302) (1968); *Smith v. Hopper,* 240 Ga. 93, 94 (239 SE2d 510) (1977).

The first enumeration of error is without merit.

2. In the second enumeration of error, Collins attacks the constitutionality of the death penalty Act. Ga. L. 1973, p. 159 (Code Ann. § 27-2534.1).

The constitutionality of the Georgia death penalty statute has been upheld by the Supreme Court of the United States and by this court each time it has been attacked on constitutional grounds. Gregg v. Georgia, 428 U. S. 153 (96 SC 2909, 49 LE2d 859) (1976); *Coley v. State,* 231 Ga. 829 (204 SE2d 612) (1974); *House v. State,* 232 Ga. 140 (205 SE2d 217) (1974); *Eberheart v. State,* 232 Ga. 247 (206 SE2d 12) (1974); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810) (1974); *McCorquodale v. State,* 233 Ga. 369 (211 SE2d 577) (1974); *Prevatte v. State,* 233 Ga. 929 (214 SE2d 365) (1975); *Young v. State,* 237 Ga. 852, 856 (230 SE2d 287) (1976).

This court has considered the contention that the aggravating circumstance set forth in Code Ann. § 27-2534.1 (b) (7) is unconstitutionally vague, and has found it to be without merit. *Harris v. State,* 237 Ga. 718, 732-734 (230 SE2d 1) (1976). See also *Blake v. State,* 239 Ga. 292 (236 SE2d 637) (1977).

The second enumeration of error is without merit.

3. In the third enumeration of error, the appellant alleges that "The trial court erred in excusing for cause juror Jannette C. Gurr upon motion of the State."

In response to questioning during the voir dire

examination, Mrs. Gurr made it unmistakably clear that she was unequivocally opposed to the imposition of the death penalty under any and all circumstances and that she would not vote to impose it regardless of the evidence and the charge of the court.

This complies with Witherspoon v. Illinois, 391 U. S. 511 (1968); Davis v. Georgia, 429 U. S. 122, 123 (1976); and *Goodwin v. Hopper,* 243 Ga. 193 (1979).

The third enumeration of error is without merit.

4. In the fourth enumeration of error, Collins alleges that the trial court erred in overruling his motion for an order directing the district attorney and the state's witnesses to refrain from making any direct or indirect reference to other pending charges against him or other crimes unrelated to the charges in this case.

The testimony complained of is that of Johnny Styles who recounted comments the appellant had made to him the night of the rape and murder concerning the number of people Collins claimed to have killed and an assault that Collins claimed to have committed.

Code Ann. § 38-305 provides: "Declarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae."

The statements were made before the murder weapon or the victim's clothing had been discarded and while Collins was bragging about having participated in the killing of the victim. As such, they were clearly part of the res gestae and were admissible. Code Ann. § 38-305. Additionally, having made no objection at the time of the testimony, appellant cannot assert error for the first time in his appeal. *White v. State,* 231 Ga. 290 (201 SE2d 436) (1973). "A party cannot during the trial ignore what he thinks to be an injustice, take his chance on a favorable verdict, and complain later." *Joyner v. State,* 208 Ga. 435, 438 (67 SE2d 221) (1951).

The fourth enumeration of error is without merit.

5. In the fifth enumeration of error, Collins contends that the trial court erred in allowing Styles to testify during Collins' trial concerning statements made to

Styles by Durham.

The statements here complained of were made after the victim had been snatched out of the car, and before she was murdered by Collins and Durham. While speaking, Durham was brandishing the knife used to intimidate Styles and the victim, who was being raped by Collins a few yards away. These statements by Durham about other crimes clearly were used as a part of the intimidation process and, as such, were a part of the res gestae. Code Ann. § 38-305. No confrontation question is presented in that none of the other offenses are attributed to Collins. Neither is any issue of the confession of a co-defendant presented inasmuch as the statement does not concern crimes for which Collins is charged.

The fifth enumeration of error is without merit.

6. In his sixth enumeration of error, Collins contends that the trial court erred by refusing to grant his motion for a commitment hearing.

Collins was arrested on August 7, 1977. Three days later, on August 10, 1977, he was indicted by the Houston County grand jury with co-defendant William Durham for the offenses of rape and murder. He moved for a commitment hearing on October 20, 1977, and after a hearing on the matter, the trial court overruled the motion.

"[A] preliminary hearing is not a required step in a felony prosecution and . . . once an indictment is obtained there is no judicial oversight or review of the decision to prosecute because of any failure to hold a commitment hearing. Finally, in no event will we overturn a conviction on direct appeal or on collateral attack because a commitment hearing was denied appellant." *State v. Middlebrooks,* 236 Ga. 52, 55 (222 SE2d 343) (1976).

The sixth enumeration of error is without merit.

7. In the seventh enumeration of error, Collins contends that "The trial court erred by refusing to grant Appellant's motion for a directed verdict of acquittal on the rape charge. The conviction of rape is not supported by the evidence."

The jury's verdict must be honored if there is any evidence to support it. *Cunningham v. State,* 235 Ga. 126, 127 (218 SE2d 854) (1957). Unless a verdict of acquittal is

demanded as a matter of law, the refusal to direct the verdict is not error. *Merino v. State,* 230 Ga. 604 (198 SE2d 311) (1973). The victim was acting under intimidation. Any assent on her part was induced by fear as a result of being taken to a remote location in the woods against her will, being jerked from the car, and being menaced by the co-defendant who stood nearby armed and telling of his violent offenses. The victim tried to avoid the attack by telling her assailants that she had venereal disease and that she was pregnant. The record is devoid of any consent to intercourse with her assailants. In his pre-trial statement, appellant stated that the victim had been raped and murdered. A lack of physical resistance may spring from reasonable apprehension of great bodily harm, violence, or other dangerous consequences to herself. Intimidation may substitute for force. *Curtis v. State,* 236 Ga. 362 (223 SE2d 721) (1976). Contrary to Collins' assertions, a charge of rape may be proven although the victim is unable to testify because she subsequently was murdered by her assailant. *Spraggins v. State,* 240 Ga. 759, 761 (243 SE2d 20) (1978).

There was evidence from which the jury could find each element of the offense of rape. Code Ann. § 26-2001. The seventh enumeration of error is without merit.

8. In the eighth enumeration of error, Collins contends that "The trial court erred in allowing the jury to consider the statutory aggravating circumstance that the offense of murder was committed while the offender was engaged in the commission of another capital felony, namely the offense of rape." This enumeration of error is without merit for the reasons stated in Division 7 of the present opinion.

9. In *Thomas v. State,* 240 Ga. 393, 401 (242 SE2d 1) (1977), this court held that mitigating circumstances "are not required to be singled out under Georgia law." The ninth enumeration of error is without merit.

10. In the tenth enumeration of error, Collins contends that "The trial court erred in furnishing the jury with forms during the jury's sentence deliberations which contained the exact wording of the two statutory aggravating circumstances alleged to have been demonstrated by the evidence."

Code Ann. § 27-2534.1 (c) provides in part: "The statutory instructions as determined by the trial judge to be warranted by the evidence shall be given in charge and in writing to the jury for its deliberation." The trial judge merely complied with this statute, and there is no constitutional, legislative, or judicial prohibition against such practice. *McCorquodale v. State,* 233 Ga. 369, 377 (12) (211 SE2d 577) (1974).

The tenth enumeration of error is without merit.

11. The charge of the trial court accords with the guidelines laid down in *Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1977); *Hawes v. State,* 240 Ga. 327 (240 SE2d 833) (1977); and *Spivey v. State,* 241 Ga. 477 (246 SE2d 288) (1978). The eleventh enumeration of error is without merit.

12. In the twelfth enumeration of error, Collins contends that "The trial court erred in charging the jury that it should state whether the sentence it imposed in the murder case would run concurrently or consecutively with the sentence to be imposed by the Court in the rape case."

Georgia law provides that the judge shall impose sentence in those cases where a sentence other than death is to be imposed. Code Ann. §§ 27-2502, 27-2503. After objection by Collins' counsel, the trial court stated that the jury only would be making a recommendation for the court's consideration. Collins has failed to specify how this procedure, if erroneous, was harmful to him. Accordingly, the twelfth enumeration of error is without merit.

13. The thirteenth enumeration of error complains that the prosecutor in his closing argument argued matters not in evidence. Upon objection of defense counsel, the court cautioned the jury that the prosecutor's remarks were not evidence. There was no objection to the prosecutor's remark that Collins killed the victim "like an animal." No motion was made for a mistrial. Pretermitting waiver, the prosecutor's argument did not fall within the proscriptions of *Prevatte v. State* and *Jordan v. State,* 233 Ga. 929, 931 (214 SE2d 365) (1975), and the trial court did not abuse its discretion on this matter. *Wisdom v. State,* 234 Ga. 650, 655 (217 SE2d 244)

(1975).

The thirteenth enumeration of error is without merit.

14. The fourteenth and fifteenth enumerations of error are considered together with the sentence review.

### Sentence Review

In our sentence review, we have considered the aggravating circumstances found by the jury and the evidence concerning the crime and the defendant introduced in court. We have reviewed the sentence as required by Ga. L. 1973, p. 159 (Code Ann. § 27-2537 (c) (1-3)), as we have in each case that we have reviewed involving a death penalty under this statute. We conclude that the sentence of death imposed on Roger Collins was not imposed under the improper influence of passion, prejudice or any other arbitrary factor. Code Ann. § 27-2537 (c) (1).

The jury found as statutory aggravating circumstances:

(1) the offense of murder was committed while the defendant was engaged in the commission of rape (Code Ann. § 27-2534.1 (b) (2)), and

(2) the offense of murder was outrageously or wantonly vile, horrible or inhumane in that it involved torture or depravity of mind (Code Ann. § 27-2534.1 (b) (7)).

The evidence supports the statutory aggravating circumstances found.

The verdict is factually substantiated. Code Ann. § 27-2537 (i).

Collins argues that his death penalty should not be upheld inasmuch as Durham, his co-defendant, was given only a life sentence. We never have followed any simplistic rule that where one of multiple co-defendants is given a life sentence, none of the other co-defendants may be sentenced to death. Neither have we created a per se rule that where the triggerman does not receive the death sentence, it may not be imposed on other participants in the crime. *Hall v. State*, 241 Ga. 252 (244 SE2d 833) (1978).

The evidence does not establish Durham as the prime

mover or sole perpetrator of this murder. Collins' car was used. He was the one who propositioned the victim and offered to take her home. After the victim stated she had a venereal disease to avoid the rape, he told her if he caught the disease from her, he would harm her. He removed the seats from the car that were used in the rape of the victim and raped the victim first. He took the jack from the trunk of the car and followed Durham and the victim into the orchard. He had blood on his feet and admitted that he had hit the victim first and then had given the jack to Durham to complete the killing. His fingerprint was on the jack.

Under these circumstances we cannot say that Collins was a bystander or an unwilling or passive participant. On the contrary, the evidence clearly establishes that he was an active participant in all aspects of the rape and murder of the victim. *Hill v. State,* 237 Ga. 794 (229 SE2d 737) (1976).

In reviewing the death penalty in this case, we have considered the cases appealed to this court since January 1, 1970, in which a death or life sentence was imposed for murder. We find that those similar cases set forth in the appendix support the affirmance of the death penalty. Roger Collins' sentence to death for murder is not excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. Code Ann. § 27-2537 (c) (3).

*Judgment and sentence affirmed. All the Justices concur.*

ARGUED SEPTEMBER 12, 1978 — DECIDED MARCH 6, 1979 — REHEARING DENIED MARCH 27, 1979.

*Aultman, Moore & Daly, James J. Daly, Jr.,* for appellant.

*Stephen Pace, Jr., District Attorney, Miriam D. Wansley, Assistant District Attorney, Arthur K. Bolton, Attorney General, Daryl A. Robinson, Assistant Attorney General,* for appellee.

APPENDIX.

*Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1974);

*Floyd v. State,* 233 Ga. 280 (210 SE2d 810) (1974); *Moore v. State,* 233 Ga. 861 (213 SE2d 829) (1974); *Mitchell v. State,* 234 Ga. 160 (214 SE2d 900) (1975); *Berryhill v. State,* 235 Ga. 549 (221 SE2d 185) (1975); *Smith v. State,* 236 Ga. 12 (222 SE2d 308) (1976); *Dobbs v. State,* 236 Ga. 427 (224 SE2d 3) (1976); *Pulliam v. State,* 236 Ga. 460 (224·SE2d 8) (1976); *Birt v. State,* 236 Ga. 815 (225 SE2d 248) (1976); *Young v. State,* 237 Ga. 852 (230 SE2d 287) (1976); *Douthit v. State,* 239 Ga. 81 (235 SE2d 493) (1977); *Corn v. State,* 240 Ga. 130 (240 SE2d 694) (1977); *Stanley v. State,* 240 Ga. 341 (241 SE2d 173) (1977); *Campbell v. State,* 240 Ga. 352 (240 SE2d 828) (1977); *Thomas v. State,* 240 Ga. 393 (242 SE2d 1) (1977); *Alderman v. State,* 241 Ga. 496 (246 SE2d 642) (1978); *Drake v. State,* 241 Ga. 583 (247 SE2d 57) (1978).