## 36046. THOMAS v. THE STATE.

MARSHALL, Justice.

Donald Wayne Thomas, the appellant, was convicted in Fulton County Superior Court of the April 19, 1979, murder of Dewey Baugus, a nine-year-old child. He was sentenced to death, and this is his appeal.

From the evidence introduced at trial, the jury was authorized to find the following facts:

On April 11, 1979, Dewey Baugus and a playmate left his mother's home on Primrose Circle in Atlanta to go

to a ball game. After the game, the two children separated to return to their respective homes in the early evening darkness. This was the last time the victim was seen alive.

The appellant, a 19-year-old male, lived at a rooming house on Primrose Circle. Linda Cook, the appellant's girlfriend, had stayed with him for approximately a week during the time in question. The appellant had kept her locked in the room when he was not there, with a bucket he provided as her only toilet facility. Linda Cook testified that when the appellant returned to the room on Friday, April 13, she noticed that he had a lot of blood on the front of his pants. The appellant took her to the railroad tracks behind Primrose Circle and showed her the body of the victim, lying face down, and told her that he had killed the child by beating him with a stick and choking him. In her presence, the appellant rolled the body over. Telling her that he had to make sure that he was dead, the appellant then jumped on the neck of the victim. Thereafter, he threw the victim's body in the bushes. Thereafter, they returned to the room, where the appellant removed his pants and hid them behind the house. That same day, the appellant, again in Linda Cook's presence, admitted the murder to his stepfather, Enzor Lowe. However, his stepfather testified that he did not believe him, because the appellant was grinning about it.

On April 19, 1979, Calvin Banks discovered the body of the victim when he took a shortcut on his way back from applying for a job at the Dolly Madison Cake Co. When the body was discovered, it was partially decomposed, and the pants the victim was wearing were pulled down to mid-thigh level.

Sometime later, after she had stopped staying with the appellant, Linda Cook contacted the authorities and related what had occurred. She was charged with concealing a death and placed in juvenile detention. She pointed out to the authorities where the appellant had discarded his pants, and they were recovered. Crime Laboratory tests confirmed that the blood on the appellant's pants was human, International Type B. The blood type of the victim could not be established due to decay.

Autopsy results showed the cause of death as

asphyxiation, and that numerous post- and ante-mortem bruises were on the body.

1. In enumerations of error 1, 2 and 10, the appellant urges the general grounds. He argues that the evidence does not support the verdict in that the evidence was circumstantial and did not exclude every reasonable hypothesis save the guilt of the accused. However, the jury was fully charged on circumstantial evidence and the reasonable-hypothesis rule pursuant to Code § 38-109. We do not find from the evidence, or from the lack of evidence, an hypothesis pointing to the innocence of the accused. *Douthit v. State,* 239 Ga. 81 (1) (235 SE2d 493) (1977). See *Hawes v. State,* 240 Ga. 327 (3) (240 SE2d 833) (1977); *Corn v. State,* 240 Ga. 130 (5) (240 SE2d 694) (1977). The credibility of witnesses is a matter left to the jury. Code § 38-1805; *Turner v. State,* 235 Ga. 826 (1) (221 SE2d 590) (1976).

We find that the evidence, viewed in the light most favorable to the verdict, supports a finding by a rational trier of fact of the essential elements of the crime of murder beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Patrick v. State,* 245 Ga. 417 (1980); *Fleming v. State,* 236 Ga. 434 (224 SE2d 15) (1976).

2. The appellant contends in his third and eighth enumerations of error that the trial court erred in excusing jurors who were conscientiously opposed to the death penalty and in overruling the appellant's motion to "strike or quash" the Georgia statute providing for death-qualification voir dire questions (Code Ann. § 59-806 (4)). We do not agree. It is clear from the voir dire examination that the jurors excused were "irrevocably committed before the trial began to vote against the death penalty regardless of the facts and circumstances that might emerge in the course of the proceedings." Witherspoon v. Illinois, 391 U.S. 510 (88 SC 1770, 20 LE2d 776) (1968); Davis v. Georgia, 429 U.S. 122 (97 SC 339, 50 LE2d 339) (1977); *Corn v. State,* 240 Ga. 130, supra; *Ward v. State,* 239 Ga. 205 (236 SE2d 365) (1977).

The appellant's assertion that the "death qual-ification voir dire question" (Code Ann. § 59-806 (4)) vio-lates the defendant's right to an impartial jury in that

it excludes an identifiable segment of the community, has been raised numerous times before this court, and in each instance has been rejected. *Collins v. State,* 243 Ga. 291 (253 SE2d 729) (1979); *Corn v. State,* 240 Ga. 130, supra; *Douthit v. State,* 239 Ga. 81, supra; *Porter v. State,* 237 Ga. 580 (229 SE2d 384) (1976).

The appellant's contention that Code Ann. § 59-806 (4) is unconstitutional in that it does not meet the constitutional standards of specificity and clarity in determining the view of the potential juror toward the death penalty, is clearly without merit, as the statute must be construed in light of the applicable case law. Witherspoon v. Illinois, supra. See Gregg v. Georgia, 428 U.S. 153 (96 SC 2909, 49 LE2d 859) (1976).

3. The constitutionality of the Georgia death penalty statute has been upheld by the Supreme Court of the United States and by this court each time it has been attacked on constitutional grounds. *Collins v. State,* 243 Ga. 291, supra, and cits. The appellant's ninth enumeration of error is without merit.

4. The appellant made a motion for the court in camera to inform witness Enzor Lowe of his privilege not to testify as to matters which may incriminate himself or which shall tend to bring infamy or disgrace or public contempt upon himself or any member of his family. Code § 38-1205(a). The appellant argues that, since the witness was the stepfather of the appellant, the stepfather's testimony as to the murder would bring infamy upon a member of his household and the court should have instructed him in this regard. However, this enumeration is without merit for two reasons. First, the privilege against self-incrimination is that of the person under examination as a witness, and is intended for his protection only; the defendant on trial has no standing to raise the issue. *Lively v. State,* 237 Ga. 35 (226 SE2d 581) (1976) and cits. Second, the privilege would not apply to the testimony of the witness in this case, in that a witness cannot refuse to testify relative to material matters concerning a crime committed by a member of his family on the basis that his answer would bring disgrace, infamy or public contempt upon him or his family. *Brooks v. State,* 233 Ga. 524 (2) (212 SE2d 355) (1975).

5. The appellant complains that he was put to trial while still under an outstanding order of incompetency. However, the record does not support such a contention. In response to a special plea of insanity, the appellant was examined by two psychiatrists, who tendered conflicting reports. The court thereafter ordered that the appellant be transferred to the custody of the Department of Human Resources in order that he could be examined by the staff at Central State Hospital. In its order, the court did not find the appellant incompetent to stand trial, but stated that the reason for the transfer was that the appellant "may be presently incompetent." The doctors at Central State, after examining the appellant, certified his competency to stand trial. The appellant was returned to Fulton County, tendered a plea of not guilty, and proceeded to trial without objection. The appellant's fifth enumeration of error is therefore without merit.

6. In his seventh enumeration of error, the appellant assigns error to the court's failure to charge, in the language requested, the appellant's request to charge number 12, which reads as follows: "All statements shall be scanned with care, and confessions of guilt shall be received with great caution. A confession alone, uncorroborated by any other evidence, shall not justify conviction."

The appellant did not give any statements to law enforcement authorities; nor did he testify at trial. The appellant did make certain admissions to Linda Cook and his stepfather concerning his commission of the murder, and their testimony concerning these admissions was received at trial.

Prior to closing argument, the trial judge informed defense counsel that he would instruct the jury to scan with care any incriminating statements made by Linda Cook, but the term "confession" would not be used in the jury instructions. Defense counsel agreed to the trial judge's giving of this modified version of defendant's request to charge number 12. Therefore, he cannot complain on appeal. Where defense counsel requests the giving of a certain jury charge, but agrees to the trial judge's giving of another charge in lieu thereof, any error in the charge given is in effect induced. Induced error

cannot be complained of on appeal. *Hill v. State,* 237 Ga. 523 (3) (228 SE2d 898) (1976).

7. *Sentence Review.* As required by Ga. L. 1973, p. 159 et seq. (Code Ann. § 27-2537 (c) (1-3)) and to complete our consideration of the appellant's enumerations of error, we have reviewed the death sentence in this case, as we review each case in which a death sentence is imposed. We have considered the aggravating circumstance found by the jury and the evidence concerning the crime and the defendant. We find that the sentence of death was not imposed under the influence of passion, prejudice or any other arbitrary factor, and is factually substantiated.

The jury in returning the death sentence found the following statutory aggravating circumstance: That the strangling of a nine-year-old child was outrageously and wantonly vile, horrible and inhuman in that it involved torture and depravity of mind. Code Ann. § 27-2534.1 (b) (7). The appellant, in his sixth enumeration of error, argues that the evidence does not support such a finding. We do not agree. The evidence shows a brutal strangulation murder of a nine-year-old child who weighed less than 60 pounds. The appellant admitted to Linda Cook that he had killed the child by beating him with a stick and choking him to death. The autopsy report showed numerous post-mortem bruises and lacerations. The appellant had a large amount of blood on the front of his pants when he returned to the room where he kept Linda Cook. The victim's pants had been partially removed and the state introduced the defendant's prior record for child molestation and assault with intent to rape during the pre-sentence hearing. Nothing could be more inhuman, depraved or outrageously vile than the killing of a helpless child under these circumstances. This child's murder certainly involved torture of the most sadistic kind. From this evidence, a rational trier of fact was authorized to find beyond a reasonable doubt that the murder was outrageously and wantonly vile and inhuman in that it involved torture and depravity of mind. Jackson v. Virginia, supra. See *Gates v. State,* 244 Ga. 587 (261 SE2d 349) (1979).

We have reviewed the trial court's instructions to the jury during the sentencing phase of the trial and find

them free of the defects dealt with in *Hawes v. State,* 240 Ga. 327, supra; *Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1977).

In reviewing the death penalty in this case, we have considered the cases appealed to this court since January 1, 1970, in which life or death sentences were imposed. We find that the following similar cases listed in the appendix support affirmance of the death penalty. The appellant's sentence to death is not excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

*Judgment affirmed. All the Justices concur.*

ARGUED MARCH 12, 1980 — DECIDED APRIL 23, 1980.

*Jack Dorsey,* for appellant.

*Lewis R. Slaton, District Attorney, Carole E. Wall, Assistant District Attorney, Arthur K. Bolton, Attorney General, W. Davis Hewitt, Assistant Attorney General,* for appellee.

APPENDIX.

*House v. State,* 232 Ga. 140 (205 SE2d 217) (1974); *Jarrell v. State,* 234 Ga. 410 (216 SE2d 258) (1975); *Gibson v. State,* 236 Ga. 874 (226 SE2d 63) (1976); *Moore v. State,* 240 Ga. 807 (243 SE2d 1) (1978); *Stevens v. State,* 242 Ga. 34 (247 SE2d 838) (1978); *Johnson v. State,* 242 Ga. 649 (250 SE2d 394) (1978); *Presnell v. State,* 243 Ga. 131 (252 SE2d 625) (1979); *Collins v. State,* 243 Ga. 291 (253 SE2d 729) (1979); *Bowen v. State,* 244 Ga. 495 (260 SE2d 909) (1979); *Brooks v. State,* 244 Ga. 574 (261 SE2d 379) (1979); *Gates v. State,* 244 Ga. 587 (261 SE2d 349) (1979); *Tucker v. State,* 244 Ga. 721 (261 SE2d 635) (1979); *Tucker v. State,* 245 Ga. 68 (263 SE2d 109) (1979); *Patrick v. State,* 245 Ga. 417 (1980).

HILL, Justice, concurring.

The defendant requested that the jury be instructed substantially in accordance with Code § 38-420 regarding "confessions." The trial court charged the jury as to "incriminating statements."

For the last 100 years, defendants have been complaining that the defendant was prejudiced by the court's charging the jury as to "confessions." *Johnson v. State,* 242 Ga. 822, 824 (Hill, J., concurring) (251 SE2d 563) (1979). Here the defendant requested a charge on "confessions."

While I concur in Division 6 of the majority opinion, I would go further and hold that a defendant cannot complain that the trial court charged on "incriminating statements" rather than on "confessions"; i.e., that the trial court charged that incriminating statements should be scanned with care and shall be received with great caution.

In the case at bar, the defendant's statements were more than amply corroborated by the blood on defendant's clothes and by his taking Linda Cook to view the body. I therefore concur in the judgment.