## 42826. ROGERS v. THE STATE.
(344 SE2d 644)

WELTNER, Justice.

This is a death penalty case. James Randall Rogers was convicted in Floyd County of murder and aggravated assault. He was sentenced to death for the murder and a term of ten years for the aggravated

assault.[1] The case is here on direct appeal, for review under the Unified Appeal Procedure (252 Ga. A-13 et seq.), and for the sentence review required by OCGA § 17-10-35.

*Facts*

At approximately 11:45 p.m. on May 21, 1980, Edith Polston, the assault victim, returned from work to the home she shared with the murder victim, Grace Perry. She found a rake on the front steps with a liquid substance on the handle and Ms. Perry lying on a bedroom floor. Before she could summon the police, she was seized from behind, forced to remove her clothing and to lie down beside Ms. Perry. She then was taken outside and struck in the face. She managed to escape, and the police were called.

The first investigating officer arrived on the scene at approximately eleven minutes after midnight on the morning of May 22, 1980, and found Rogers attempting to climb a fence at the rear of the victim's property. The officer employed moderate force to subdue Rogers, then handcuffed Rogers to the railing of the front porch while he began a search of the house. He found Ms. Perry lying naked on the floor of a bedroom with a large puddle of blood between her legs. He then gave Rogers *Miranda* warnings and placed him in a patrol car for transportation to police headquarters.

Rogers' mother came to the crime scene. Ms. Polston overheard Rogers tell his mother, "Ma — Mama, I'm gone this time; I'm gone." En route to the police station, Rogers volunteered that he had killed Ms. Perry but "there's not anything you can do about it, I'm crazy and I've got papers to prove it."

The autopsist testified that an external examination of the victim's body revealed a large amount of dry blood on the legs and traumatic infliction of wounds on the lower portion of the body. An internal examination disclosed a laceration to the back exterior portion of the vagina, which was approximately an inch and a half long. The autopsy further revealed a total perforation of the wall of the vagina. This perforation also extended through the liver, the diaphragm and into the right lung. The autopsist testified that the perforation caused a sudden and massive hemorrhaging into the right chest cavity which, in turn, caused the death of the victim.

Testimony indicated that the trauma to the victim's body was

---

[1] The jury returned its verdict as to sentence on June 22, 1985. A motion for new trial was filed July 18, 1985; heard September 13, 1985, and denied September 13, 1985. A notice of appeal was filed October 11, 1985, and the record docketed in this court October 22, 1985. The case was orally argued January 13, 1986. In a previous appearance of the case in this court, Rogers' conviction and sentence were overturned on the ground of a disparity of women in the grand jury pool. *Rogers v. State*, 250 Ga. 652 (300 SE2d 490) (1983).

consistent with the use by the assailant of a blunt instrument in the shape of a pole which was at least two feet long and no more than two inches in diameter. Testimony indicated that the trauma would have required a considerable, purposeful force to be employed. The officer who recovered the rake from the front porch testified that two to four feet of the rake's handle was covered with what appeared to be blood and other fluid.

A fingerprint taken from the handle of the rake subsequently was identified as Rogers'. Human blood found on the handle of the rake, and hairs found on Rogers' body, were consistent with Ms. Perry's. Bite marks on one of Rogers' arms were consistent with the dentures worn by the elderly victim.

The sufficiency of the evidence was not raised on appeal. However, we have reviewed the evidence pursuant to Rule IV (B) (2) of the Unified Appeal Procedure, and find it sufficient to sustain the convictions. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

### Enumerations of Error

1. Rogers first contends that one prospective juror, Mr. Compton, should have been excused for bias in favor of the death penalty. Mr. Compton first raised his hand, then responded, "Yes, sir, I believe in it," to this question by defense counsel: "Let me ask you, ladies and gentlemen, with regard to the death penalty — Mr. Weaver asked you were there any of you who are conscientiously opposed to the death penalty — what I'd like to ask you is, do any of you — do any of you have strong feelings about the death penalty, about the imposition of the death penalty, that it ought to be imposed more often — or that it is the proper punishment for any particular crime? If — if you have those kinds of feelings, could I see your hand?" Mr. Compton also responded, "Yes, sir," to this defense question: "Let me ask you, is what you're stating to me that you feel that if a murder — if a murder conviction is had by the jury — in other words, if the jury decides that — that the defendant is guilty, then it is — is it your feeling that death is the only proper punishment?"

In response to questioning by the court and the defense, Mr. Compton indicated three times that he could set aside his feelings about the death penalty and be governed by the court's instructions as to sentencing options, including any limitations imposed by the court; that his feelings would not affect his ability to be a fair and impartial juror.

"The voir dire of . . . [Mr. Compton] presents the reverse of the Witherspoon question." *Spivey v. State*, 253 Ga. 187, 194 (319 SE2d 420) (1984). Although he first indicated that he would automatically

vote for the death penalty if Rogers were found guilty, he subsequently swore that he could set aside his feelings favoring the death penalty and be governed by the court's sentencing instructions, including limitations imposed by the court on the jury's discretion to impose the death sentence. We find here no error. *Cargill v. State*, 255 Ga. 616 (340 SE2d 891) (1986); *Hance v. State*, 254 Ga. 575, 576 (332 SE2d 287) (1985); *Spivey v. State*, supra.

2. Rogers contends next that the trial court should have excused the entire panel when one prospective juror responded to a defense voir dire question by saying he had heard that Rogers had been convicted by a previous jury. The court immediately took corrective action, including a determination that each panel member would follow his instructions. We find no error in the court's refusal to excuse the entire panel. *Parker v. State*, 255 Ga. 167, 169 (3) (336 SE2d 242) (1985); *Wilson v. State*, 250 Ga. 630, 636 (6) (300 SE2d 640) (1983).[2]

3. Rogers contends that two prospective jurors erroneously were excluded for cause under *Witherspoon v. Illinois*, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (1968). In response to questions of the trial court, each indicated that her beliefs would prevent her from following the court's instructions and her oath as a juror. This reply satisfies the standard for exclusion adopted by the Supreme Court of the United States in *Wainwright v. Witt*, 469 U. S. __ (105 SC 844, 83 LE2d 841 (1985), as followed by this court in *Alderman v. State*, 254 Ga. 206, 207 (327 SE2d 168) (1985).

The Supreme Court of the United States recently has held that "the Constitution does not prohibit the States from 'death qualifying' juries in capital cases." *Lockhart v. McCree*, __ U. S. __ (106 SC 1758, __ LE2d __) (1986). " 'Death qualification,' unlike the wholesale exclusion of blacks, women, or Mexican-Americans from jury service, is carefully designed to serve as the State's concededly legitimate interest in obtaining a single jury that can properly and impartially apply the law to the facts of the case at both the guilt and sentencing phases of a capital trial." 54 USLW at 4452-4453. In reliance on *Wainwright*, the court indicated that "an impartial *jury* consists of nothing more than '*jurors* who will conscientiously apply the law and find the facts.' " 54 USLW at 4453. The court reiterated that it has "upheld against constitutional attack the Georgia capital sentencing plan which provided that the same jury must sit in both phases of a

---

[2] We note that months before trial, Rogers filed a written request for sequestered voir dire, which was denied. While we are reluctant to interfere with the discretion presently vested in the trial judge relative to such, we note that the additional time required for sequestered voir dire is a small factor, when compared to the ever-present possibilities of tainting the entire array, such as presented in this enumeration of error. We strongly recommend that in all death penalty cases motions for sequestered voir dire be granted.

bifurcated capital murder trial." 54 USLW at 4454.

The *Wainwright* standard for exclusion was clarified further by the court in *Lockhart*: "It is important to remember that not all who oppose the death penalty are subject to removal for cause in capital cases; those who firmly believe that the death penalty is unjust may nevertheless serve as jurors in capital cases so long as they state clearly that they are willing to temporarily set aside their own beliefs in deference to the rule of law . . . . [T]he group of '*Witherspoon* excludables' includes only those who cannot and will not conscientiously obey the law with respect to one of the issues in a capital case . . . ." 54 USLW at 4453.

The two prospective jurors whose exclusion by the trial court is challenged by Rogers indicated that they would not lay aside their opposition to the death penalty and would not decide the case according to the court's instructions. The court properly struck them for cause.

4. Rogers contends that the court should have excluded his statements because he was only nineteen years of age, is mentally impaired, was on drugs, was beaten, did not understand his *Miranda* rights, and that his statements resulted from an illegal arrest, coercion, promises, and extended questioning while he had no access to his mother or counsel. He also contends that certain of his statements were given before *Miranda* warnings were administered.

The trial court's factual determinations during the *Jackson-Denno* hearing will be accepted on appeal unless they are clearly erroneous. *Hance v. State*, 245 Ga. 856 (268 SE2d 339) (1980).

Investigating officers came to the scene in response to a report that someone may have been killed. Officer Brock testified that at about midnight, he discovered Rogers attempting to climb a fence behind the victim's house and took him into custody; that Rogers was "a little nervous" but that "he wasn't really out of the ordinary"; that no promises or threats were made to Rogers; and that Rogers appeared to understand his *Miranda* rights, which were read to him twice before he was transported to the police station. Officer Brock's testimony was confirmed by Officer Clark.

Rogers' mother came to the scene. The assault victim, Ms. Polston, overheard Rogers state to his mother, as he was being placed into the patrol car, "Ma — Mama, I'm gone this time; I'm gone." Ms. Polston testified that the statement was in response to a question asked by Rogers' mother; that the police were not questioning Rogers at the time. Detective Kinney testified that after he arrived at the scene, he heard Rogers say that he had killed someone; that the statement was not in response to questioning by police officers. Officer Brock testified that while riding in the patrol car on the way to the police station, Rogers stated, "I killed her, I killed her," and then

laughed "real loud" saying, "there's not anything you can do about it" because "I'm crazy and I've got papers to prove it." Officer Brock testified that Rogers had not been questioned at the scene or on the way to the station. *Miranda* warnings had been given to Rogers soon after his arrest and, again, in the patrol car, before driving to the police station. "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." *Miranda v. Arizona*, 384 U. S. 436, 478 (86 SC 1602, 16 LE2d 694) (1966).

During the *Jackson-Denno* hearing, the court heard testimony that Officer Lang struck Rogers in the side of his face with his flashlight while escorting him to the patrol car. The court excluded a statement made by Rogers to Officer Lang but allowed the jury to hear testimony concerning the circumstances under which Officer Lang struck Rogers.

When Rogers arrived at the police station, he refused to sign a waiver of rights form. He appeared to be under the influence of something. Detective Kinney testified that he was concerned whether Rogers was capable of waiving his rights. Accordingly, Rogers was transported to a hospital to determine his physical condition. During mid-morning of the following day, Rogers insisted on talking with the police, signed a waiver of rights form, and appeared to understand his *Miranda* rights. Detective Bishop encouraged Rogers to obtain an attorney, but Rogers said he had not done anything and did not need an attorney. A tape-recorded statement was obtained later that morning before Rogers had been under arrest for twelve hours and after less than half a morning of police questioning.

The court heard testimony that the tape-recorded statement was given in an atmosphere free of threats or promises. Officer Pruitt, a friend of the Rogers family, who had known Rogers since he was a young child, encouraged Rogers to talk with the officers but did not participate in the questioning. Officer Pruitt testified that as he walked by, he saw Rogers being questioned, and asked him how he was doing; that Rogers responded, "I really messed up this time, hadn't I?," and that he said, "Well, just talk to detective Bishop," and he walked on.

The court heard evidence that Rogers was nineteen years of age at the time of the offense and had an I.Q. of 85, which places him in the category of average intelligence of a low level; that Rogers has some brain dysfunction, which could cause him to be confused in certain situations.

Rogers' arrest was not illegal. OCGA § 17-4-20; *Dean v. State*, 250 Ga. 77, 81 (295 SE2d 306) (1982). The trial court was authorized to determine that Rogers was capable of waiving his rights although there was evidence indicating a low average intelligence and some

brain dysfunction. *Moses v. State*, 245 Ga. 180, 186 (263 SE2d 916) (1980). The statements volunteered by Rogers while he was not being questioned by the police are not excludable under *Miranda* principles. *Rhode Island v. Innis*, 446 U. S. 291, 300-302 (100 SC 1682, 64 LE2d 297) (1980). We find no error. *Hance v. State*, supra.

5. Rogers complains of the denial of his motion to suppress blood, hair and fingernail samples taken at the hospital. He told the investigating officers in respect to these samples: "Go ahead, get them all that you want," after his rights had been read to him and he had signed a written waiver form. We find no violation of the self-incrimination provisions of the state and federal constitutions. *Welch v. State*, 254 Ga. 603 (3) (331 SE2d 573) (1985); *State v. Thornton*, 253 Ga. 524 (2) (322 SE2d 711) (1984); *Raines v. White*, 248 Ga. 406 (248 SE2d 7) (1981).

6. Rogers contends that the court should have sustained his motion for mistrial based upon a communication between a bailiff and a juror. Evidence presented during the hearing on the motion for new trial indicated that during dinner at a restaurant with all the jurors and all the bailiffs present, one of the jurors asked one of the bailiffs the whereabouts of Devier, a criminal defendant who recently had been tried for murder in Floyd County. According to the juror, the deputy replied that Devier soon was going to be "fried." According to the bailiff, he answered the question by saying, "I think he's at Jackson, but I can't discuss the case." The state introduced evidence that none of the other jurors heard the question or the response, and that the decision of the juror who heard the response was not influenced by the fact or contents of the response, whatever it might have been. We hold on the narrow facts of this case that the state overcame the presumption that the defendant was harmed by the communication. *McMichael v. State*, 252 Ga. 305 (4) (313 SE2d 693) (1984).

7. Rogers contends that Georgia's death penalty statute is unconstitutional because of the unfettered discretion vested in the district attorney, jury, and the Governor and Board of Pardons and Paroles to determine which defendants shall receive the death penalty. Georgia's death penalty procedure provides *limited* discretion as to the imposition of the death penalty but allows *unlimited* discretion for the imposition of a sentence of life imprisonment. OCGA § 17-10-31; *Gilreath v. State*, 247 Ga. 814 (279 SE2d 650) (1981). This ground lacks merit.

8. We find no abuse of discretion in the denial of Rogers' motion for appointment of a criminal investigator. *Baxter v. State*, 254 Ga. 538 (2) (331 SE2d 561) (1985). Rogers was represented by two attorneys for over two years prior to trial of the case. The file of the district attorney and the transcript from his first prosecution were made available to him. *Ake v. Oklahoma*, 470 U. S. __ (105 SC 1087, 84

LE2d 53) (1985), does not indicate a contrary result. See *Lindsey v. State*, 254 Ga. 444, 448 (330 SE2d 563) (1985).

9. There is no merit in Rogers' contention that the federal constitution prevents death qualification of jurors. "[T]he Constitution does not prohibit the States from 'death qualifying' juries in capital cases." *Lockhart v. McCree*, supra, Division 3.

10. Rogers contends that during closing arguments the prosecutor improperly commented three times upon his failure to testify. In the first instance, the prosecutor was calling the jury's attention to testimony that Rogers was arrested while attempting to climb a fence behind the victim's house whereas he could have walked ten feet to his home. The prosecutor was commenting not upon Rogers' failure to testify but upon Rogers' explanation that he became frightened and tried to find his way out. As such, it was a permissible comment on flight. In the second and third instances, the prosecutor was calling to the jury's attention that although the defense was attempting to argue Rogers' lack of recollection of what had occurred and the inconclusiveness of the circumstantial evidence, the jury had heard testimony that Rogers admitted more than once that he had killed the victim. In none of the three instances did the argument amount to an improper comment upon Rogers' failure to testify as to the matters in question. *Ingram v. State*, 253 Ga. 622 (8) (323 SE2d 801) (1984).

11. The transcript of proceedings indicates that a proper foundation was laid for introduction of Rogers' taped statement. *Green v. State*, 250 Ga. 610 (1) (299 SE2d 544) (1983).

12. The trial court did not abuse its discretion by denying Rogers' motion for sequestered individual voir dire examination of prospective jurors. *Berryhill v. State*, 249 Ga. 442 (7) (291 SE2d 685) (1982).

13. Rogers contends that the Unified Appeal Procedure violates his Fifth Amendment right to remain silent and his Sixth Amendment right to counsel by giving him several opportunities to state any objections he may have had to the manner in which his counsel was conducting the defense. The extension of those opportunities is for the benefit, not to the detriment, of the accused. *Romine v. State*, 251 Ga. 208 (305 SE2d 93) (1983); *Sliger v. State*, 248 Ga. 316 (3) (282 SE2d 291) (1981).

*Sentence Review*

14. The jury found as statutory aggravating circumstances (1) that the "offense of murder was committed while the defendant was engaged in the commission of a burglary," and (2) that the defendant committed "an outrageously vile, horrible, and inhuman murder involving (a) depravity of mind, (b) torture to the victim prior to the death of the victim, and (c) aggravated battery to the victim prior to

the death of the victim." See OCGA § 17-10-30 (b) (2) and (b) (7).

The jury was authorized by the evidence to find that shortly after burglarizing the home of Faye Bolt, Rogers forcibly entered the nearby home shared by Grace Perry and Edith Polston. (Checks taken from the Bolt residence were subsequently discovered in the Perry home.) The jury was authorized further to find that Rogers, upon discovering Ms. Perry at home alone, attacked her, ripped off her clothes, and rammed a rake handle into her vagina at least twice, one thrust causing an inch-and-a-half tear in the vaginal wall near the rectum and the other penetrating the vaginal wall a full two feet into the body, passing through the liver, the diaphragm and into the right lung.

Pretermitting whether the evidence showed an aggravated battery "preced[ing] the killing and [constituting] a separate and distinct act from the act causing death," *Davis v. State*, 255 Ga. 588, 593 (3) (c) (340 SE2d 862) (1986), the evidence is sufficient to support the jury's finding that the murder was outrageously vile, horrible, and inhuman and that it involved torture and depravity of mind. See *Phillips v. State*, 250 Ga. 336 (6) (297 SE2d 217) (1982). Thus, the jury's finding of the § (b) (7) aggravating circumstance is supported by the evidence.

The evidence also supports the jury's finding of the § (b) (2) aggravating circumstance, and, therefore, supports the jury's sentencing verdict. OCGA § 17-10-35 (c) (2).

15. We do not find that the sentence of death was imposed under the influence of passion, prejudice, or other arbitrary factor. OCGA § 17-10-35 (c) (1).

16. Rogers was still serving a probationary sentence on burglary and theft charges the evening of May 21, 1980, when he burglarized the Bolt home, burglarized the home shared by Ms. Perry and Ms. Polston, murdered Ms. Perry, and attacked Ms. Polston in a manner that closely resembled the onset of his attack on Ms. Perry. The death sentence in this case is neither excessive nor disproportionate to sentences imposed in similar cases, considering both the crime and the defendant. OCGA § 17-10-35 (c) (3).

*Judgment affirmed. All the Justices concur, except Bell, J., who concurs in the judgment but dissents as to Division 6.*

DECIDED JUNE 25, 1986 —
RECONSIDERATION DENIED JULY 15, 1986.

*David Smith, Jr., Kenneth C. Fuller,* for appellant.
*Stephen F. Lanier, District Attorney, Michael J. Bowers, Attorney General, J. Michael Davis, Assistant Attorney General,* for appellee.

APPENDIX.

*Curry v. State*, 255 Ga. 215 (336 SE2d 762) (1985); *Ross v. State*, 254 Ga. 22 (326 SE2d 194) (1985); *Devier v. State*, 253 Ga. 604 (323 SE2d 150) (1984); *Allen v. State*, 253 Ga. 390 (321 SE2d 710) (1984); *Felker v. State*, 252 Ga. 351 (314 SE2d 621) (1984); *Brown v. State*, 250 Ga. 66 (295 SE2d 727) (1982); *Messer v. State*, 247 Ga. 316 (276 SE2d 15) (1981); *Justus v. State*, 247 Ga. 276 (276 SE2d 242) (1981); *Green v. State*, 246 Ga. 598 (272 SE2d 475) (1980); *Cape v. State*, 246 Ga. 520 (272 SE2d 487) (1980); *Thomas v. State*, 245 Ga. 688 (266 SE2d 499) (1980); *Gates v. State*, 244 Ga. 587 (261 SE2d 349) (1979); *Brooks v. State*, 244 Ga. 574 (261 SE2d 379) (1979); *Collins v. State*, 243 Ga. 291 (253 SE2d 729) (1979); *Spraggins v. State*, 243 Ga. 73 (252 SE2d 620) (1979); *Davis v. State*, 242 Ga. 901 (252 SE2d 443) (1979); *Johnson v. State*, 242 Ga. 649 (250 SE2d 394) (1978); *Moore v. State*, 240 Ga. 807 (243 SE2d 1) (1978); *Gibson v. State*, 236 Ga. 874 (226 SE2d 63) (1976); *McCorquodale v. State*, 233 Ga. 369 (211 SE2d 577) (1974).