## 38884. PHILLIPS v. THE STATE.

PER CURIAM.

On August 13, 1981, the defendant, Raymond C. Phillips, went to see his estranged wife at her place of employment, an elementary school, where she was a secretary. He was carrying some clothes that his wife had left behind when she moved out. Inside the clothes, he had concealed a .22 rifle. He motioned through a glass window for his wife. When she came into the hall, he shot five times. Some of the bullet fragments hit the ceiling, the door to the girl's restroom, and the outside wall of the office. Mrs. Phillips was fatally wounded.

Phillips was charged with murder, aggravated assault upon Charlotte Dickerson, (a co-worker of the victim), and burglary of the school. He waived jury trial. The trial court found Phillips guilty on all counts and sentenced him to death for the murder, 10 years for the aggravated assault and 20 years for the burglary, to be served consecutively. We affirm the conviction for murder, reverse the convictions for aggravated assault and burglary, and set aside the sentence of death.

1. Phillips contends in his first enumeration of error that he was suffering from a delusional compulsion at the time of the offense and his conviction must therefore be set aside. See Code Ann. § 26-703.

Insanity is an affirmative defense which a defendant must prove by a preponderance of the evidence. *Brown v. State,* 250 Ga. 66 (2c) (295 SE2d 727) (1982). The presumption of sanity in favor of the state does not disappear upon the presentation of evidence to the contrary and may be relied upon by the jury, or, as in this case, by the trial

court acting as the trier of fact, after the introduction of uncontradicted expert testimony of insanity. *Brooks v. State,* 247 Ga. 744 (279 SE2d 649) (1981).

In support of his defense, Phillips relied heavily upon the testimony of Dr. Margaret Hiers, who has a Ph.D. in the field of mental retardation, and Dr. Lewis Jacobs, a psychiatrist from Central State Hospital. Dr. Hiers had never interviewed Phillips. Her testimony consisted primarily of explaining the term "paranoid schizophrenia" and, in response to hypothetical questions posed by the defense based upon certain actions taken by Phillips, she testified that those actions were not inconsistent with the existence of paranoid schizophrenia.

Dr. Jacobs testified that Phillips was competent to stand trial but, based upon information given to him by Phillips, he concluded that the defendant suffered from a delusional compulsion at the time of the murder and he was not able to resist committing the act.

Dr. Jacobs conceded that "malingering" or "faking" was possible. The testimony of several lay witnesses as to Phillips' behavior before, during and after the killing is consistent with the trial court's finding that Phillips was not acting under a delusional compulsion which "over-mastered his will to resist committing the crime." Code Ann. § 26-703.

We conclude that, reviewing the evidence in the light most favorable to the state, a rational trier of fact could have found that Phillips failed to prove by a preponderance of the evidence that he was insane at the time of the crime. *Brown v. State,* supra.

2. Phillips contends in his fourth enumeration of error that the denial of his motion for directed verdict as to the offense of burglary was error.

At the time of the killing, school was in recess for summer vacation. The State contends that the school building was therefore not open to the public and, absent express permission to come upon the premises, Phillips' entry was "without authority" within the meaning of Code Ann. § 26-1601. We disagree.

The front door to the building was open and summer recreation programs were being conducted on the playgrounds. Painters were working on the outside of the building. The participants in the summer programs, the painters and the secretaries had free access to the school building. Moreover, Phillips and the husband of Mrs. Dickerson often entered the building to see their wives for lunch.

The evidence fails to show that Phillips entered or remained in the school building "without authority." Code Ann. § 26-1601. The conviction for burglary must be reversed. See, *Miller v. State,* 149 Ga. App. 108 (1) (253 SE2d 469) (1979).

3. Phillips contends in his fifth enumeration of error that the denial of his motion for directed verdict as to the offense of aggravated assault was error. We agree.

The victim of the alleged aggravated assault, Mrs. Dickerson, testified that she did not see a weapon of any kind, that Phillips made no threatening gestures toward her, that she did not feel intimidated by Phillips, and that not until four days after the incident was she shown the marks on the outside concrete block wall where either some bullets or bullet fragments had hit.

The evidence fails to establish that Phillips, using the .22 rifle, or otherwise, attempted to commit a violent injury to the person of Mrs. Dickerson, or that he committed an act which placed her in any apprehension of immediately receiving a violent injury. Code Ann. §§ 26-1301, 26-1302. *Smith v. State,* 140 Ga. App. 395 (231 SE2d 143) (1976). See also, *Wilkie v. State,* 153 Ga. App. 609, 612 (7) (266 SE2d 289) (1980). The conviction for aggravated assault must also be reversed.

### Sentence Review

The trial court found the presence of three statutory aggravating circumstances and imposed a sentence of death for the murder.

4. The trial court found that the murder was committed while the defendant was engaged in the act of burglary. Code Ann. § 27-2534.1 (b) (2). In Division 2 of this opinion, we set aside defendant's conviction for burglary. For the same reasons, the aggravating circumstance in which burglary was found must be set aside.

5. The trial court found that the "offender by his act of murder, armed robbery, or kidnapping, *knowingly created a great risk of death to more than one person* in a public place by means of a weapon or device which would normally be hazardous to the lives of more than one person." (Emphasis supplied.) Code Ann. § 27-2534.1 (b) (3).

The evidence in this case does not support a finding that the defendant knowingly created a great risk of death to more than one person in a public place. *Jarrell v. State,* 234 Ga. 410, 424 (216 SE2d 258) (1975). This aggravating circumstance must also be set aside.

6. The final statutory aggravating circumstance found by the trial court was that the "offense of murder was outrageously and wantonly vile, horrible and inhuman in that it involved torture to the victim and depravity of mind on the part of the defendant." Code Ann. § 27-2534.1 (b) (7).

(a) We have recognized the possibility that the § (b) (7) aggravating circumstance can be abused. *Harris v. State,* 237 Ga. 718, 732 (230 SE2d 1) (1976). Section (b) (7) is less specific and objectively measurable than the other statutory aggravating circumstances.[1] Its purpose is to reach those extraordinary murders, involving the unnecessary and wanton infliction of pain or suffering, or depravity of mind, which merit the ultimate penalty under our law. The section may not, however, be interpreted so broadly that it can be applied to every murder;[2] in that event, the requirement that the sentence of death may not be imposed unless at least one statutory aggravating circumstance is found could not serve its intended purpose of helping to distinguish cases in which the death penalty *is* imposed from the many cases in which it is *not.* As we stated in *Harris v. State,* supra, "we have no intention of permitting this statutory aggravating circumstance to become a 'catch all' for cases simply because no other statutory aggravating circumstance is raised by the evidence." 237 Ga. at 732.

(b) The trial court found the presence of § (b) (7) based upon the following facts: Phillips' wife was in the process of obtaining a divorce that he didn't want. She had obtained a temporary restraining order prohibiting Phillips from molesting and harassing her and had moved out of the marital home, taking the couple's three children. Phillips related to friends shortly before the murder that his life was in a mess and that if his wife did not return to him, he would probably kill her. On the morning of the murder, Phillips went to the school where his wife worked to discuss a bill for attorney fees of $150. He left, but returned later that morning, carrying, on a hanger, clothes that she had left behind when she moved out. Inside the clothes, Phillips had concealed a .22 rifle suspended from a coat hanger. When his wife entered the hall to speak to Phillips, she apparently saw the gun, because she screamed "Oh, no!" before Phillips fired 5 times in rapid succession. He grabbed her and shook her, then left.

According to Phillips, he went to a remote spot where he had often gone as a child, intending to commit suicide. Instead, less than an hour after he murdered his wife, Phillips turned himself in at the

---

[1] See Godfrey v. Georgia, 446 U. S. 420, 423, fn. 2 (100 SC 1759, 64 LE2d 398) (1980).

[2] Even though a "person of ordinary sensibility could fairly characterize almost every murder as 'outrageously or wantonly vile, horrible and inhuman.'" Godfrey, supra, 446 U. S. at 428-29.

sheriff's office.

Dr. Howard of the state crime lab conducted the autopsy. He testified that Mrs. Phillips had been shot 4 times: in the right shoulder, the left ear, the back, and the left side of the head; she lived at least 5 minutes from the onset of the injuries. Other than the four gunshot wounds, Dr. Howard found no signs of physical injuries or evidence of a physical struggle. He could not state the order in which the 4 wounds were inflicted.

(c) As we stated in *Hance v. State,* 245 Ga. 856 (3) (268 SE2d 339) (1980), "The evidence must be sufficient to satisfy the first major component of [the § (b) (7)] aggravating circumstance . . . ('outrageously or wantonly vile, horrible or inhuman'), and at least one (or more) of the three parts of the second component (aggravated battery to the victim, or torture to the victim, or depravity of mind of the defendant)." 245 Ga. at 862-63.

The trial court in this case, acting as the trier of fact, found two parts of the second component: torture and depravity of mind. The state contends the foregoing facts show torture and depravity of mind. We cannot agree.

Torture may be found where the victim is subjected to serious physical, sexual, or psychological abuse before death. *Hance v. State,* supra. Depravity of mind may be found where the victim is subjected to serious psychological abuse before death, or to mutilation, serious disfigurement, or sexual abuse after death.[3] Ibid.

Here it is undisputed that there was no sexual abuse and that the victim died after Phillips left. Thus, the trial court's finding of torture and depravity of mind must rest upon serious physical or psychological abuse before death.

The state argues that, since Mrs. Phillips suffered pain and anticipated the prospect of death, she suffered serious physical and psychological abuse before death. Such an interpretation of § (b) (7) would allow the trier of fact to find § (b) (7) in almost every murder case. We cannot so broadly construe "physical" or "psychological"

---

[3] Age and physical characteristics of the victim may also support a finding of depravity of mind. *Hance v. State,* supra. We have upheld a finding of § (b) (7) where the victim was very old or very young. See, *Smith v. State,* 249 Ga. 228 (290 SE2d 43) (1982); *Messer v. State,* 247 Ga. 316 (276 SE2d 15) (1981); *Nelson v. State,* 247 Ga. 172 (274 SE2d 317) (1981); *Cape v. State,* 246 Ga. 520 (272 SE2d 487) (1980); *Hill v. State,* 246 Ga. 402 (271 SE2d 802) (1980); *Thomas v. State,* 245 Ga. 688 (266 SE2d 499) (1980) (re-examined at 247 Ga. 233 (275 SE2d 318) (1981)); *Bowen v. State,* 244 Ga. 495 (260 SE2d 855) (1979); *Ruffin v. State,* 243 Ga. 95 (252 SE2d 472) (1979); *Blake v. State,* 239 Ga. 292 (236 SE2d 637) (1977). The victim in this case was neither.

abuse.

Our previous cases are instructive. We have upheld a finding of (b) (7) where the victim was accosted, taken forcibly to another location, taunted with the prospect of death, and then killed.[4] The facts in such cases showed serious psychological abuse before death. We refuse to hold that the mere apprehension of death, immediately before the fatal wounds are inflicted, amounts to serious psychological abuse prior to death.

We have upheld a finding of § (b) (7) where the defendant inflicted deliberate, offensive and prolonged pain on his victim prior to death.[5] The facts in such cases showed serious physical abuse before death.

The state contends that *Gilreath v. State,* 247 Ga. 814 (279 SE2d 650) (1981), stands for the proposition that where the victim receives multiple wounds, § (b) (7) may be found regardless of other facts. We must disagree with this contention. Gilreath shot his wife five times in her right side with a .30-.30 lever action rifle from two to three feet away. He shot his father-in-law in the chest with a .12 guage shotgun, following which he shot his wife in the face with the shotgun. Then he shot his father-in-law twice in the head with a .22 caliber rifle. Finally, Gilreath poured gasoline on and around the victims as well as on the kitchen floor, where a pilot light was burning, and fled to North Carolina. *Gilreath v. State,* 247 Ga., supra, 839 (fn. 19).

We noted in *Strickland v. State,* 247 Ga. 219 at 232 (275 SE2d 29) (1981), where one of the victims was shot either four or five times, that, "[t]his, alone, no other facts appearing, might not suffice for a

---

[4] See, *Brown v. State,* 247 Ga. 298 (275 SE2d 52) (1981); *High v. State,* 247 Ga. 289 (276 SE2d 5) (1981); *Dampier v. State,* 245 Ga. 427 (265 SE2d 565) (1980) (re-examined at 245 Ga. 882 (268 SE2d 349) (1980)); *Hardy v. State,* 245 Ga. 272 (264 SE2d 209) (1980) (re-examined at 247 Ga. 235 (275 SE2d 319) (1981)); *Brooks v. State,* 244 Ga. 574 (261 SE2d 379) (1979) (re-examined at 246 Ga. 262 (271 SE2d 172) (1980)); *Ruffin v. State,* supra, fn. 3; *Morgan v. State,* 241 Ga. 485 (246 SE2d 198) (1978); *Harris v. State,* 237 Ga. 718 (230 SE2d 1) (1976).

[5] See, *Jones v. State,* 249 Ga. 605 (293 SE2d 708) (1982); *Mathis v. State,* 249 Ga. 454 (291 SE2d 489) (1982); *Buttrum v. State,* 249 Ga. 652 (293 SE2d 334) (1982); *Krier v. State,* 249 Ga. 80 (287 SE2d 531) (1982); *Cunningham v. State,* 248 Ga. 558 (284 SE2d 390) (1981); *Cervi v. State,* 248 Ga. 325 (282 SE2d 629) (1981); *Tyler v. State,* 247 Ga. 119 (274 SE2d 549) (1981); *Nelson v. State,* supra, fn. 3; *Cape v. State,* supra, fn. 3; *Hamilton v. State,* 244 Ga. 145 (259 SE2d 81) (1979); (re-examined at 246 Ga. 264 (271 SE2d 173) (1980)); *Thomas v. State,* supra, fn. 3; *Spraggins v. State,* 243 Ga. 73 (252 SE2d 620) (1979), and *Davis v. State,* 242 Ga. 901 (252 SE2d 443) (1979) (both re-examined at 246 Ga. 432 (271 SE2d 828) (1980)); *Dix v. State,* 238 Ga. 209 (232 SE2d 47) (1977); *Birt v. State,* 236 Ga. 815 (225 SE2d 248) (1976); *McCorquodale v. State,* 233 Ga. 369 (211 SE2d 577) (1974).

finding under Code Ann. § 27-2534 [.1] (b) (7)."[6]

We hold that where the defendant kills his victim by four or five shots in rapid succession, no other facts appearing, he has not tortured the victim within the meaning of § (b) (7).

The evidence in this case is undeniably sufficient to demonstrate that a murder was committed. For this heinous offense, Phillips must be punished. We cannot agree, however, that this murder was "outrageously and wantonly vile, horrible and inhuman in that it involved torture to the victim and depravity of mind on the part of the defendant."

7. Because it is not supported by a valid statutory aggravating circumstance, the death sentence imposed in this case must be set aside. The case is remanded to the trial court for the imposition of a life sentence on the defendant.

8. In his third enumeration of error, Phillips contends the sentence of death in this case violates the prohibition against cruel and unusual punishment contained in the 8th Amendment to the U. S. Constitution. Since we have set aside his death sentence, this enumeration of error need not be considered.

*Judgment affirmed in part, reversed in part. All the Justices concur, except Bell, J., not participating.*

DECIDED NOVEMBER 10, 1982 —
REHEARING DENIED NOVEMBER 29, 1982.

*Perry, Moore & Studstill, Daniel L. Studstill,* for appellant.
*Vickers Neugent, District Attorney, Lew S. Barrow, Robert B. Ellis, Jr., Assistant District Attorneys, Michael J. Bowers, Attorney General, Janice G. Hildenbrand, Staff Assistant Attorney General,* for appellee.

---

[6] In *Strickland,* other facts did appear. Strickland killed 3 people, all of whom were related to his girlfriend. "Strickland did not fire wildly, hitting his victims' bodies at random locations. He fired with a single purpose in mind — to inflict mental and emotional pain upon [his girlfriend], who had rejected his marriage proposal . . . and to cause great mental anguish by disfiguring her body so she would not be desirable to any other man. Strickland accurately and methodically shot [his girlfriend] twice in her abdomen, twice in each thigh, five times in her buttocks around her rectum and vagina, and once in her right foot." She lived.