STATE OF NORTH CAROLINA v. CHARLES DAVID STANLEY

No. 635A82

(Filed 6 March 1984)

**Criminal Law § 135.4— aggravating factor of especially heinous, atrocious, or cruel—insufficiency of evidence to support**

In a prosecution for murder in the first degree in which defendant received a death sentence, the trial court erred in permitting the jury to consider whether the murder committed by defendant was "especially heinous, atrocious, or cruel," as those terms are used in G.S. 15A-2000(e)(9). In the instant case, defendant drove his car to the place where his wife, her sister and his stepson were walking; he pulled alongside the curb, pointed his rifle at his wife, and shot her a number of times in rapid succession; he then departed the scene without leaving his car, drove to the Tarboro Police Station, and surrendered. Although the murder was indeed cruel and unpardonable, there was no evidence that defendant inflicted suffering upon the victim, either physically or psychologically, beyond that ordinarily suffered by anyone who is shot to death. Neither was there any evidence of unusual brutality exceeding that normally present in first degree murder. Further, there was no evidence that defendant himself was unusually depraved. Previous cases have made it clear that to submit this aggravating factor to a jury, the capital offense must not be *merely* heinous, atrocious, or cruel; it must be *especially* heinous, atrocious, or cruel. The defendant's acts must be characterized by "*excessive* brutality, or physical pain, psychological suffering, or dehumanizing aspects *not normally present*" in a first degree murder case.

Justice MITCHELL concurring in the result.

Justice MARTIN dissenting.

Justice COPELAND joins in this dissent.

APPEAL of right from a death sentence imposed by *Judge Thomas H. Lee*, presiding at the 4 October 1982 Criminal Session of EDGECOMBE Superior Court. *See* N.C. Gen. Stat. § 7A-30 (1981).

*Rufus L. Edmisten, Attorney General, by Joan H. Byers, Assistant Attorney General, for the state.*

*Adam Stein, Appellate Defender, by Ann B. Petersen and Malcolm Ray Hunter, Jr., Assistant Appellate Defenders; James R. Glover, Assistant Appellate Defender, Appellate Defender Clinic, for defendant appellant.*

EXUM, Justice.

The dispositive issue in this appeal concerns the propriety of permitting the jury to consider whether the murder committed by defendant was "especially heinous, atrocious, or cruel," as those terms are used in N.C. Gen. Stat. § 15A-2000(e)(9). After a careful review of the facts and our prior decisions, we conclude this aggravating factor should not have been submitted to the jury. Since this is the only aggravating circumstance submitted and there is no evidence of any other which could have been submitted, we vacate the judgment imposing a sentence of death and in lieu thereof impose a sentence of life imprisonment.

## I.

At the time of her death, the victim, Joyce Stanley, was married to but legally separated from defendant, pursuant to a separation agreement entered in November 1981. They had been married for over nineteen years and had two children, Tracy Garnett Stanley and Hope Denice Stanley. The victim's son (defendant's stepson), James Allen Joyner, had lived with them until his graduation from high school. The Stanleys had lived in Rocky Mount since 1977, when they moved from Baltimore, Maryland. Defendant had retired from work in 1979 under total and permanent disability caused by heart disease and cancers of the nose, ear, and liver.

In mid-March 1982, some six weeks before the murder, the victim caused defendant to be arrested as a result of an incident which occurred in Rocky Mount: When her sister, Sandra Taylor, and the victim arrived at the victim's home, defendant was in a car parked in front of the house. The two women entered the house and watched defendant through the windows. Defendant got out of his car and walked into the yard, carrying a rifle. He was obviously intoxicated. The victim called the police. Defendant dropped the rifle at the corner of the house. When police arrived, they found him in the yard, playing with his dogs.

On 25 April 1982 the victim, her sister, Sandra Taylor, and two of the victim's children, Hope Stanley and James Joyner, left Rocky Mount to visit and have Sunday dinner with the victim's mother, Lottie Pope, in Tarboro. As they drove through Tarboro, they spotted defendant in a car parked at a laundromat some

three blocks from Ms. Pope's house. After they arrived and during the meal, they noticed defendant driving back and forth on the street in front of the house. Defendant passed by the house five or six times.

After the meal, most of the family went to sit on the front porch. The victim, Sandra and James went for a walk. As they started up the sidewalk, with James slightly ahead of his mother and aunt, defendant turned the corner onto the street in front of Ms. Pope's house. Sandra, determined to get the license number of the car so she could call the police, ran out in the street behind defendant's car as he pulled next to the curb. She hollered, "Get the license plate number." As James turned toward the car, Sandra exclaimed, "Oh God, he's got a gun."

Shots rang out. James picked up a brick and ran toward the car, counting seven shots as he covered the 20 to 30 feet to the car. The bullets struck the victim, spinning her around and onto the ground, killing her.

James threw the brick, shattered the windshield, jumped in the passenger's side of the car, and grabbed the gun. With the gun pointing straight up, defendant fired a shot which went through the car's roof. As James forced the gun barrel through the window on the driver's side, Sandra grabbed the gun with her left hand. She beat defendant in the face with her right hand and took the gun out of the car. She turned the gun on defendant and pulled the trigger. The gun clicked but did not fire. Defendant said something to the effect of, "That's all right, I killed the bitch."

Testimony conflicted regarding whether the victim spoke to defendant just before he shot her. Immediately before the first shot, Sandra heard the victim say "Please Stan." She did not, however, mention this fact in her detailed statement given to the police on 28 April 1982. Although James and Hope heard Sandra say, "Oh God, he's got a gun," neither of them heard the victim utter any words before the shooting started. James testified that no one said anything to defendant before the defendant started shooting. Lowell Gunter, Lottie Pope's husband, testified that he heard no one speak to defendant before the shooting.

After the shooting, defendant drove to the Tarboro police station and surrendered.

Defendant was convicted of first degree murder. After presentation of evidence and arguments in the penalty phase of the proceedings, the trial court submitted one aggravating and several mitigating factors[1] to the jury. Upon finding the existence of the one aggravating factor, i.e., that the murder was especially heinous, atrocious, or cruel, and finding no factors in mitigation,[2] the jury recommended that defendant be sentenced to death. The trial court entered judgment accordingly.

## II.

Defendant's appeal is directed only to the penalty phase of his trial. He assigns several errors; but the dispositive assignment of error is to the submission of the aggravating factor that the murder "was especially heinous, atrocious, or cruel," as these terms are used in section 15A-2000(e)(9) of our capital punishment statute.

Although we have determined that section 15A-2000(e)(9) is not unconstitutionally vague, *State v. Martin*, 303 N.C. 246, 278 S.E. 2d 214, *cert. denied*, 454 U.S. 933 (1981), the application of this aggravating circumstance to particular cases is sometimes difficult. The propriety of submitting this aggravating factor turns on "the peculiar surrounding facts of the capital offense under consideration." *State v. Pinch*, 306 N.C. 1, 35, 292 S.E. 2d 203, 228, *cert. denied*, 103 S.Ct. 474 (1982).

Not every capital offense is "especially heinous, atrocious, or cruel." *State v. Goodman*, 298 N.C. 1, 24-26, 257 S.E. 2d 569, 585 (1979). Indeed,

[w]hile we recognize that every murder is, at least arguably, heinous, atrocious, and cruel, we do not believe that this

---

1. The court submitted the following mitigating factors: (1) Defendant has no significant prior criminal history; (2) defendant committed the murder while under the influence of a mental or emotional disturbance; and (3) defendant lacked the capacity to appreciate the criminality of his conduct. *See* N.C. Gen. Stat. § 15A-2000(f)(1), (2) & (6) (1983).

2. The trial court, pursuant to N.C. Gen. Stat. § 15A-2000(f)(9), also instructed the jury to determine if there were other circumstances which it found to have mitigating value. The jury responded negatively.

subsection is intended to apply to every homicide. By using the word 'especially' the legislature indicated that there must be evidence that the brutality involved in the murder in question must exceed that normally present in any killing before the jury would be instructed upon this subsection.

*Id.* The circumstance is appropriate for a "conscienceless or pitiless crime which is unnecessarily torturous to the victim." *Id.; accord, State v. Rook,* 304 N.C. 201, 224, 283 S.E. 2d 732, 747-48 (1981), *cert. denied,* 455 U.S. 1038 (1982).

"A person of ordinary sensibility could fairly characterize almost every murder as being [especially heinous, atrocious, or cruel]." *Godfrey v. Georgia,* 446 U.S. 420, 428-29 (1980). That persons holding precisely this perception might comprise the jury in a capital case highlights the need for caution in tendering this aggravating circumstance to a jury and underscores the critical function served by our review of its submission on appeal. *Id.* This factor must "not become a 'catch-all' provision which can always be employed in cases where there is no evidence of other aggravating circumstances." *Goodman,* 298 N.C. at 25, 257 S.E. 2d at 585. And when "it is doubtful whether a particular aggravating circumstance should be submitted, the doubt should be resolved in favor of defendant. When 'a person's life is at stake . . . the jury should not be instructed upon one of the [aggravating] statutory circumstances in a doubtful case.'" *State v. Oliver,* 302 N.C. 28, 61, 274 S.E. 2d 183, 204 (1981) (quoting *State v. Goodman,* 298 N.C. at 30, 257 S.E. 2d at 588, and holding that the "especially heinous" factor should not have been submitted in the Hodge murder).

The cases cited above make it clear that to submit this aggravating factor to a jury, the capital offense must not be *merely* heinous, atrocious, or cruel; it must be *especially* heinous, atrocious, or cruel. The defendant's acts must be characterized by "*excessive* brutality, or physical pain, psychological suffering, or dehumanizing aspects *not normally present*" in a first degree murder case. *State v. Blackwelder,* 309 N.C. 410, 414, 306 S.E. 2d 783, 786 (1983). Any murder shocks our conscience. Yet, for us to review the sufficiency of the evidence to support a jury's finding that a particular murder is "especially heinous, atrocious, or cruel," we must harden our perceptions and feelings to the legal

proposition that not all murders may be so characterized. Only after accepting this view may we then differentiate among murders on the basis of their respective brutality, winnowing case by case those which are merely heinous, atrocious or cruel, from those which the jury could find are especially so. It is a grisly duty.

In support of submission of the "especially heinous" circumstance here, the state argues the evidence is sufficient to permit the jury to find: (1) The victim suffered a prolonged, unnecessarily torturous death at the hands of her assailant. (2) She pled for her life before she was shot. (3) Defendant tortured her psychologically immediately before the killing by "stalking" her in his automobile. Similar facts, involving physical and psychological torture and a merciless killing of one begging for his life, have been deemed enough under our prior cases to support a jury's conclusion that the murder was especially heinous, atrocious or cruel.

We have recognized the excessive cruelty and especial heinousness of circumstances in which a victim endured prolonged suffering at the assailant's hands before death. In *Martin,* 303 N.C. at 246, 278 S.E. 2d at 219, the victim was paralyzed from the waist down by the first gunshots. Defendant then, over a 25-minute period, dragged her into another room, beat her with a pistol, threw her repeatedly against a wall, beat her on the head with his fists, and beat her again with the pistol before he finally fired the fatal shots.. In *Goodman,* 298 N.C. at 26, 257 S.E. 2d at 585, defendant shot the victim a number of times and cut him repeatedly with a knife. Defendant then placed him, alive, in the trunk of a car where he remained for a number of hours while en route to another county. There defendant removed him from the trunk and shot him twice through the head.

That death is not instantaneous, however, does not alone make a murder especially heinous, atrocious or cruel. In *State v. Hamlette,* 302 N.C. 490, 276 S.E. 2d 338 (1981), defendant shot the victim three times as the victim talked on a public telephone in the parking lot of a store in Roxboro. Defendant had been riding around and drinking beer most of the evening. He shot the victim from behind without any established motive and then fled. The victim lingered for twelve days before ultimately dying because

of the gunshot wounds. This Court concluded that the "especially heinous" aggravating circumstance should not have been submitted to the jury. The Court characterized the murder as "heinous but not 'especially heinous' within the meaning of that term as used in the statute. . . . [I]t was not unnecessarily tortuous [sic] or outrageously wanton or vile. *Contrast State v. Goodman, supra,* and *State v. Johnson,* [298 N.C. 47, 257 S.E. 2d 597 (1979)], *with State v. Oliver and Moore,* 302 N.C. 28, 274 S.E. 2d 183 (1981)." *Id.* at 504, 276 S.E. 2d at 347.

In *State v. Oliver,* 302 N.C. 28, 61, 274 S.E. 2d 183, 204 (1981), the victim of an armed robbery said to his assailants, "Please don't shoot me. Go ahead and take the money." We characterized this statement as being one in which the victim "begged for his life." We said, "With Watts [the victim] pleading for his life defendant . . . mercilessly shot him to death." We concluded that these circumstances were enough to support the jury's finding that the murder was "especially heinous, atrocious or cruel." On the second appeal in *State v. Oliver,* 309 N.C. 326, 307 S.E. 2d 304 (1983), a majority of the Court again concluded that submission of the "especially heinous" aggravating factor was proper. The Court then characterized the murder of the pleading victim as one "calculated to leave the victim in his last moments as a sentient being, aware but helpless to prevent impending death, focusing on the deliberate, intentional and senseless aspect of a conscienceless and pitiless murder inflicting psychological torture." *Id.* at 346, 307 S.E. 2d at 318. The Court in *Oliver II* relied on circumstances present in the case other than the victim's having pleaded "Please don't shoot me." The Court said:

> In the case sub judice, the evidence justifies a conclusion that the murder of Allen Watts, committed in total disregard for the value of human life, was a senseless murder, executed in cold blood as the victim pleaded 'please don't shoot me'; and that defendant showed no remorse. In fact, defendant Moore later laughingly boasted to his fellow inmates that he pointed the gun at Watts who begged not to be shot and offered defendant more money, and that defendant 'kind of liked the idea of it.' As recently stated in *Magill v. State,* 428 So. 2d 649, 651 (Fla. 1983), '[i]t is not merely the specific and narrow method in which a victim is killed which makes a murder heinous, atrocious, and cruel; rather, it is the entire

set of circumstances surrounding the killing.' We therefore hold with respect to defendant Moore's murder of Watts that under the peculiar circumstances of this case, including but not limited to the victim's imploring 'please don't shoot me,' the evidence was sufficient to support the submission to the jury of the factor that the murder was especially heinous, atrocious, or cruel.

*Id.* at 347, 307 S.E. 2d at 319 (footnote omitted).

The question before us is whether the evidence is sufficient to permit a jury to find, as the state argues, that the victim here (1) suffered a prolonged, unnecessarily torturous death as in *Martin* and *Goodman;* (2) begged for her life before being "mercilessly shot . . . to death" under circumstances evidencing the infliction of psychological torture and an unusually depraved defendant as in *Oliver,* or (3) was psychologically tortured by being "stalked" by defendant before he killed her.

When we determine, in criminal cases, whether the evidence of defendant's guilt of a particular offense is sufficient to be submitted to the jury, we apply the following rules:

The evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant dismissal; and all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State is to be considered . . . .

*State v. Powell,* 299 N.C. 95, 99, 261 S.E. 2d 114, 117 (1980). When the evidence is so viewed, there must be " 'substantial evidence of all material elements of the offense' in order to create a jury question on defendant's guilt or innocence." *State v. Locklear,* 304 N.C. 534, 538, 284 S.E. 2d 500, 502 (1981) (quoting *State v. Jones,* 303 N.C. 500, 504-05, 279 S.E. 2d 835, 838 (1981)). The United States Supreme Court has articulated the test of the sufficiency of evidence in a criminal case as being whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis original). This Court, in turn, has

said that " '[s]ubstantial evidence' is that amount of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Cox,* 303 N.C. 75, 87, 277 S.E. 2d 376, 384 (1981). The state's evidence must do more than raise merely a suspicion or conjecture as to the existence of the necessary elements of the charged offense. *State v. LeDuc,* 306 N.C. 62, 75, 291 S.E. 2d 607, 615 (1982).

We think this same approach to the evidence should be used in determining whether the evidence is sufficient to support a finding by the jury of certain essential facts which, in turn, would support its conclusion that a first degree murder was especially heinous, atrocious, or cruel.

Taking this approach, we are satisfied the evidence here is insufficient. It leaves the existence of the facts essential to support the ultimate conclusion in a state of conjecture and surmise. The evidence shows defendant fired nine shots at the victim, all in rapid succession, from an automobile which he never left. He inflicted no other injuries. According to the pathologist, the lethal wound, which entered the victim's back and lacerated the aorta, rendered her unconscious within minutes. Though death was not instantaneous, the victim did not linger and suffer for any prolonged period before death. There is no evidence that defendant intended that his wife suffer a prolonged, torturous death, or that she in fact suffered a prolonged, torturous death. The only reasonable inference to be drawn from the evidence is that defendant intended her death to be as instantaneous as he could make it. That she might have remained conscious for a matter of minutes after being shot does not distinguish this case from the ordinary death-by-shooting cases. *See Hamlette,* 302 N.C. 490, 276 S.E. 2d 338 (where the victim lingered twelve days after being shot).

There is evidence that the victim said "Please Stan" sometime before she was shot. This evidence does not support a reasonable inference that the victim was mercilessly shot to death while begging for her life. What the words "Please Stan" might have referred to remains in the realm of conjecture and surmise. The words could have been uttered in an effort to get defendant to leave the area before the victim was aware that defendant intended to shoot her. The words also could have been uttered with

reference to some other momentary conflict between the victim and her estranged husband. Likewise, the evidence does not support a reasonable inference that defendant, who never left his car, heard these words uttered by the victim who was standing on the curb. Since no eyewitness other than Sandra Taylor heard this utterance, it is not reasonable to infer that defendant heard it. Neither is there any evidence which supports an inference that defendant boasted after the shooting, as did the defendant in *Oliver II*, that he had killed someone begging for his life and "kind of liked the idea of it." 309 N.C. at 347, 307 S.E. 2d at 319. The evidence is simply that defendant stated immediately after the shooting, "that's all right, I killed the bitch." Thereafter, he immediately drove to the Tarboro Police Department and surrendered. When advised that he was charged with the first degree murder of his wife, defendant said he did not know he had killed her and, if he had known, he would have killed himself.

Finally, there is no evidence from which it could be reasonably inferred that defendant "stalked" his victim, torturing her psychologically before the shooting. The evidence shows simply that defendant drove past the house, where the victim was located, several times. The victim and her family, knowing of defendant's presence in the area, nevertheless went outside the house "for a walk." Obviously they were not being tortured psychologically by defendant's actions in driving back and forth in front of the house. At no time before the shooting did defendant threaten the victim or any of her family. Rather, he shot the victim suddenly, nine times in rapid succession, and she died shortly thereafter.

The murder here was indeed cruel and unpardonable, as is every unlawful, deliberate taking of human life. But there is no evidence that defendant inflicted suffering upon the victim, either physically or psychologically, beyond that ordinarily suffered by anyone who is shot to death. Neither is there any evidence of unusual brutality exceeding that normally present in first degree murder. There is no evidence that defendant himself was unusually depraved.

The Georgia Supreme Court has reached the same result on quite similar facts in *Phillips v. State*, 250 Ga. 336, 297 S.E. 2d 217 (1982). Phillips was convicted of the first degree murder of his estranged wife who was in the process of obtaining a divorce that

Phillips did not want. The Georgia Supreme Court recited the facts as follows:

> Phillips related to friends shortly before the murder that his life was in a mess and that if his wife did not return to him, he would probably kill her. On the morning of the murder, Phillips went to the school where his wife worked to discuss a bill for attorney fees of $150. He left, but returned later that morning, carrying, on a hanger, clothes that she had left behind when she moved out. Inside the clothes, Phillips had concealed a .22 rifle suspended from a coat hanger. When his wife entered the hall to speak to Phillips, she apparently saw the gun, because she screamed "Oh, no!" before Phillips fired 5 times in rapid succession. He grabbed her and shook her, then left.

*Id.* at 339, 297 S.E. 2d at 220. Less than an hour after the murder Phillips surrendered himself at the sheriff's office. A physician who conducted the autopsy testified that the deceased "had been shot 4 times: in the right shoulder, the left ear, the back, and the left side of the head; she lived at least 5 minutes from the onset of the injuries." *Id.* at 340, 297 S.E. 2d at 220.

The Georgia Supreme Court concluded that the evidence did not support submission of its statutory aggravating circumstance that the "offense of murder was outrageously and wantonly vile, horrible and inhuman in that it involved torture to the victim and depravity of mind on the part of the defendant." The Georgia Court said:

> Torture may be found where the victim is subjected to serious physical, sexual, or psychological abuse before death. *Hance v. State*, [245 Ga. 856, 268 S.E. 2d 339 (1980)]. Depravity of mind may be found where the victim is subjected to serious psychological abuse before death, or to mutilation, serious disfigurement, or sexual abuse after death. Ibid.

> Here it is undisputed that there was no sexual abuse and that the victim died after Phillips left. Thus, the trial court's finding of torture and depravity of mind must rest upon serious physical or psychological abuse before death.

State v. Stanley

The state argues that, since Mrs. Phillips suffered pain and anticipated the prospect of death, she suffered serious physical and psychological abuse before death. Such an interpretation of § (b)(7) would allow the trier of fact to find § (b)(7) in almost every murder case. We cannot so broadly construe 'physical' or 'psychological' abuse.

*Id.* at 340-41, 297 S.E. 2d at 221 (footnote omitted).

This case is very nearly controlled by *Godfrey v. Georgia*, 446 U.S. 420 (1980), which establishes a constitutionally mandated limit beyond which aggravating factors like our "especially heinous" factor may not be submitted. Both here and in *Godfrey*, defendant murdered his estranged wife. Each victim had obtained warrants against her husband shortly before the murders. Court appearances resulting from these charges were imminent in each case. Even the manner of the killings are similar. In *Godfrey*, defendant

got out his shotgun and walked with it down the hill from his home to the trailer where his mother-in-law lived [and where his wife was staying]. Peering through a window, he observed his wife, his mother-in-law, and his 11-year-old daughter playing a card game. He pointed the shotgun at his wife through the window and pulled the trigger. The charge from the gun struck his wife in the forehead and killed her instantly. He proceeded into the trailer, striking and injuring his fleeing daughter with the barrel of the gun. He then fired the gun at his mother-in-law, striking her in the head and killing her instantly.

[Defendant] then called the local sheriff's office, identified himself, said where he was, explained that he had just killed his wife and mother-in-law, and asked that the sheriff come and pick him up.

*Id.* at 425. In the instant case, defendant drove his car to the place where his wife, her sister and his stepson were walking. He pulled alongside the curb, pointed his rifle at his wife, and shot her a number of times in rapid succession. He departed the scene without leaving his car, drove to the Tarboro police station, and surrendered.

Defendant in *Godfrey*, like defendant here, was sentenced to death by reason of the jury's determination that one statutory aggravating factor existed. In *Godfrey* the jury determined, under the language of the Georgia sentencing statute, that the murder "was outrageously or wantonly vile, horrible and inhuman." *Id.* at 426. The Georgia Supreme Court affirmed the death sentence asserting simply that the verdict was "factually substantiated." *Id.* at 432. The United States Supreme Court concluded that in so doing, the Georgia Supreme Court had unconstitutionally construed the "outrageously vile" aggravating factor in the Georgia sentencing statute. The Court said:

> The petitioner's crimes cannot be said to have reflected a consciousness materially more 'depraved' than that of any person guilty of murder. His victims were killed instantaneously. They were members of his family who were causing him extreme emotional trauma. Shortly after the killings, he acknowledged his responsibility and the heinous nature of his crimes. These factors certainly did not remove the criminality from the petitioner's acts. But, as was said in *Gardner v. Florida*, 430 U.S. 349, 358, 51 L.Ed. 2d 393, 97 S.Ct. 1197, it 'is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion.'

> That cannot be said here. There is no principled way to distinguish this case, in which the death penalty was imposed, from the many cases in which it was not. Accordingly, the judgment of the Georgia Supreme Court insofar as it leaves standing the petitioner's death sentences is reversed, and the case is remanded to that court for further proceedings.

*Id.* at 433 (footnote omitted).

We recognize the difference in language in the Georgia "outrageously vile" factor and our own "especially heinous" factor. But the essence of the Georgia aggravating factor and our own, as we have interpreted it in earlier cases, is the same. The Georgia statute mentions expressly "torture to the victim and depravity of mind . . . of the defendant." *Phillips v. State*, 250 Ga. at 338, 297 S.E. 2d at 220. Interpreting our "especially heinous" factor, we have said that it connotes a "conscienceless or

pitiless crime which is unnecessarily torturous to the victim."
*State v. Goodman*, 298 N.C. 1, 25, 257 S.E. 2d 569, 585 (1979),
*quoting with approval State v. Dixon*, 283 So. 2d 1 (Fla. 1973),
*cert. denied*, 416 U.S. 943 (1974). We have approved a jury instruc-
tion defining the factor as follows:

> You are instructed that the words 'especially heinous, atro-
> cious or cruel' means extremely or especially or particularly
> heinous or atrocious or cruel. You're instructed that 'heinous'
> means extremely wicked or shockingly evil. Atrocious means
> marked by or given to extreme wickedness, brutality or
> cruelty, marked by extreme violence or savagely fierce. It
> means outrageously wicked and vile. 'Cruel' means designed
> to inflict a high degree of pain, utterly indifferent to or en-
> joyment of the suffering of others.

*Id.* The circumstance "does not arise in cases in which death was
immediate and in which there was no unusual infliction of suffer-
ing upon the victim." *Rook*, 304 at 226, 283 S.E. 2d at 747. Submis-
sion of the circumstance is appropriate "when there is evidence of
excessive brutality, beyond that normally present in any killing
. . . ." *Pinch*, 306 at 34, 292 S.E. 2d at 228. "A conscienceless and
pitiless murder inflicting psychological torture" upon the victim
qualifies for the "especially heinous" factor. *Oliver II*, 309 N.C. at
346, 307 S.E. 2d at 318. The Court in *Oliver II* also thought it
significant that defendant had boasted after the crime that he had
murdered someone begging for his life and "kind of liked the idea
of it"—a boast which demonstrates an unusual depravity of mind.
Thus, both the Georgia factor and ours apply to those murders
which are particularly painful or torturous to the victim, either
psychologically or physically, or which demonstrate an unusual
depravity of mind on the part of the defendant beyond that nor-
mally present in first degree murder.

Further, in *Eddings v. Oklahoma*, 455 U.S. 104, 109, n. 4
(1982), a majority of justices noted that the application of the
Oklahoma "heinous, atrocious or cruel" factor in that case most
likely violated *Godfrey*. In *Proffitt v. Wainwright*, 685 F. 2d 1227
(11th Cir. 1982), *modified on other grounds*, 706 F. 2d 311 (11th
Cir.), *cert. denied*, 52 U.S.L.W. 3423 (U.S. Nov. 28, 1983) (No.
83-113), the court applied *Godfrey* to Florida's "heinous, atrocious
or cruel" factor and found that Florida had unconstitutionally ap-

plied that factor under the reasoning of *Godfrey*. In both *Oliver II* and *State v. Rook*, 304 at 225-26, 283 S.E. 2d at 747-48, this Court analyzed the application of the "especially heinous" factor in light of the decision in *Godfrey*.

We conclude that it was error in this case to submit the "especially heinous" aggravating factor.

Since there is no evidence in the case to support any aggravating circumstance, we must overturn the sentence of death and in lieu thereof impose a sentence of life imprisonment. N.C. Gen. Stat. § 15A-2000(d)(2); *State v. Silhan*, 302 N.C. 223, 271, 275 S.E. 2d 450, 483 (1981). Accordingly, the judgment below imposing a sentence of death is vacated and defendant is hereby sentenced to a term of imprisonment for the remainder of his natural life. Defendant is entitled to credit for any time spent in confinement as a result of these charges before the date of this judgment. *See State v. Bondurant*, 309 N.C. 674, 309 S.E. 2d 170 (1983). The Superior Court of Edgecombe County shall issue an amended commitment in accordance with this judgment. *See State v. Jackson*, 309 N.C. 26, 305 S.E. 2d 703 (1983).

Defendant assigns and we find no error in the guilt-innocence phase of his trial.

Guilt-Innocence Phase: No error.

Sentencing Phase: Death sentence vacated; sentence of life imprisonment imposed.

Justice MITCHELL concurring in the result.

I find most of the reasoning and arguments advanced by Justice Martin in his dissent to be correct. If we were construing the statute in isolation, I would be compelled to join him. I concur in the result reached by the majority, however, solely because I am unable to distinguish satisfactorily this case from *Godfrey v. Georgia*, 446 U.S. 420 (1980), which establishes a constitutionally mandated limit on aggravating factors to be considered in capital cases.

Justice MARTIN dissenting.

I cannot concur in the conclusion that the evidence was insufficient to submit the aggravating circumstance that the killing was especially heinous, atrocious, or cruel. The question before us is whether, as a matter of law, there is sufficient evidence to submit the issue to the jury for its determination. In making this decision, we must view the evidence in the light most favorable to the state, discrepancies and contradictions are disregarded, the state's evidence is taken as true, and the state is entitled to every inference of fact that may be reasonably deduced therefrom. *State v. Lester,* 294 N.C. 220, 240 S.E. 2d 391 (1978); *State v. Witherspoon,* 293 N.C. 321, 237 S.E. 2d 822 (1977). The defendant's evidence, unless favorable to the state, is not to be considered in deciding the question. *State v. Earnhardt,* 307 N.C. 62, 296 S.E. 2d 649 (1982). If there is substantial evidence of each element of the issue under consideration, the issue must be submitted to the jury for its determination. *State v. Roseman,* 279 N.C. 573, 184 S.E. 2d 289 (1971). If the evidence only raises a suspicion or conjecture as to the existence of the fact to be found, the issue should not be submitted. *State v. Cutler,* 271 N.C. 379, 156 S.E. 2d 679 (1967).

Chief Justice Stacy stated the applicable rule as follows:

[I]f there be any evidence tending to prove the fact in issue, or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture ' in regard to it, the case should be submitted to the jury.

*State v. Johnson,* 199 N.C. 429, 431, 154 S.E. 730, 731 (1930).

The majority fails to properly apply the rule. Rather, it analyzes the evidence in the light most favorable to the defendant. This is demonstrated by the following excerpts from its opinion:

1. "[D]efendant fired nine shots *at* the victim . . . ." (Emphasis added.) In the light most favorable to the state, defendant hit Joyce with each of the nine bullets. The medical doctor testified she was shot nine times, leaving eleven wounds in her body.

2. "[T]he lethal wound . . . rendered her unconscious within minutes." True, but in the view most favorable to the state, Joyce experienced the pain of each of the nine bullets entering her body. The medical doctor testified that she was conscious during the entire incident.

3. "There is no evidence that defendant intended that his wife suffer a prolonged, torturous death . . . ." In the light most favorable to the state, the circumstantial evidence indicates that defendant intended his wife, Joyce, to suffer, not die instantaneously. Although he shot her nine times, striking her in various parts of her body, she remained conscious for several minutes. The doctor testified she was conscious during the entire incident. Immediately after the killing, the defendant laughed and said, "That's all right. I killed the bitch." Furthermore, defendant's intention is not relevant as to whether there is sufficient evidence to submit the issue to the jury.

4. "The words ["Please, Stan"] also could have been uttered with reference to some other momentary conflict between the victim and her estranged husband." I assume that the majority is indicating that Joyce Stanley, under these circumstances—with defendant pointing a gun out of the car window at her—meant "Please, Stan, go pay the light bill." True, the jury could so find, but applying the rule as we are bound to do, the logical inference is: "Please, Stan, don't kill me."

5. "[T]he evidence does not support a reasonable inference that defendant, who never left his car, heard these words uttered by the victim who was standing on the curb." In the light most favorable to the state, the inference is that defendant did hear the plea, but ignored it, and proceeded to gun down Joyce Stanley. Joyce was ten to twelve feet from Stanley at the time.

6. "Since no eyewitness other than Sandra Taylor heard this utterance, it is not reasonable to infer that defendant heard it." This infers that numerous persons were in the area of the killing. Only one other witness, Joyce's son, James, was in the immediate vicinity. Other persons were on the porch of a house some distance from the street. In the light

most favorable to the state, since Sandra heard what Joyce said, the defendant also heard it. He was only ten to twelve feet from her.

7. "Neither is there any evidence which supports an inference that defendant boasted after the shooting . . . that he had killed someone begging for his life . . . ." True, he did not use those words. Whether he was boasting when he laughed and said "That's all right. I killed the bitch," was for the jury.

8. "[T]he victim did not linger and suffer for any prolonged period before death." The medical doctor testified that Joyce was conscious during the entire incident. The mortal wound ruptured the main blood vessel from the heart, causing Joyce to bleed to death internally. She was conscious for several minutes before she died, according to the doctor. Several minutes can be a prolonged or extended period of time, depending upon what is happening and whose point of view is being considered. The time in question may have passed very quickly for defendant, but agonizingly slow and painful for Joyce before she mercifully slipped into unconsciousness. Joyce was not killed instantaneously. Having been shot nine times, the inference most favorable to the state is that she did indeed suffer.

9. "The victim and her family, knowing of defendant's presence in the area, nevertheless went outside the house 'for a walk.' Obviously they were not being tortured psychologically by defendant's actions . . . ." Actually, Sandra testified that they went into the street to get the license number on defendant's car. James did say, "We *were* all going out for a walk." (Emphasis added.) Defendant's arrival altered their intentions. They then resolved to get the license number. Again, discrepancies in the evidence are to be disregarded.

Other examples may be found in the opinion, the point being that the majority abandoned the proper rule with respect to the issue. It resolved all the evidence in the light most favorable to the defendant.

Moreover, it appears that the majority seeks to perform the task of the jury and make the determination of whether the killing was in fact especially heinous, atrocious, or cruel. The majority states: "Only after accepting this view may we then differentiate among murders on the basis of their respective brutality, winnowing case by case those which are merely heinous, atrocious or cruel, from those which the jury could find are especially so. It is a grisly duty." Our duty on the issue presently before us is not to "differentiate among murders" with respect to the heinousness of the crime. That task is properly our duty when we undertake a proportionality review. N.C. Gen. Stat. § 15A-2000(d)(2) (1983). Here, we have only to determine if there is sufficient evidence to submit the issue to the jury. *State v. Oliver*, 309 N.C. 326, 307 S.E. 2d 304 (1983).

The author of the majority opinion expresses concern that jurors of "ordinary sensibility" might characterize almost every murder as especially heinous, atrocious, or cruel. He urges us to consider this in determining the issue before us in this case. Our speculation as to how a jury would answer an issue has no proper place in our determination of whether the issue should be submitted to the jury. Nevertheless, there are at least three safeguards to protect the administration of justice from this possibility that troubles the majority: (1) Jurors may be examined on voir dire with respect to this question and removed from the jury in proper instances. (2) The trial court must instruct the jury with respect to the issue, and nothing else appearing, we assume that the jury follows such instructions. (3) This Court may correct such a result, either by finding error in the jury selection, the court's jury instructions, or upon proportionality review, as the circumstances of a case may require.

In passing, I note that in two places the majority appears to be limiting the key factor on this issue to the *brutality* of the murder: "The defendant's acts must be characterized by more brutality than is inherent in every murder"; "differentiate among murders on the basis of their respective brutality." Of course, brutality is a factor to be considered, along with the facts of the killing and the entire set of circumstances surrounding the killing. But it is not conclusive. *State v. Oliver, supra*, 309 N.C. 326, 307 S.E. 2d 304 (1983). The correct standard is expressed in *State v. Pinch*, 306 N.C. 1, 292 S.E. 2d 203, *cert. denied*, 74 L.Ed. 2d 622

(1982). The aggravating circumstance " 'does not arise in cases in which death was immediate and in which there was no unusual infliction of suffering upon the victim.' " *Id.* at 34, 292 S.E. 2d at 228 (citation omitted). It is appropriate only when there is evidence of "excessive brutality, beyond that normally present in any killing, or when the facts as a whole portray the commission of a crime which was conscienceless, pitiless or unnecessarily torturous to the victim." *Id. See State v. Rook,* 304 N.C. 201, 283 S.E. 2d 732 (1981), *cert. denied,* 455 U.S. 1038 (1982); *State v. Goodman,* 298 N.C. 1, 257 S.E. 2d 569 (1979).

The majority relies heavily upon *Godfrey v. Georgia,* 446 U.S. 420 (1980). Setting aside the question of whether the language in the Georgia statute, "outrageously or wantonly vile, horrible and inhuman," means the same as "especially heinous, atrocious, or cruel," I do note that the Georgia statute is written in the conjunctive, evidently requiring the jury to find that the crime was vile *and* horrible *and* inhuman, whereas our statute is written in the disjunctive, only requiring that the killing be especially heinous, *or* especially atrocious, *or* especially cruel. Moreover, the cases are factually different. In *Godfrey,* both victims were killed instantly upon being shot once. Joyce remained conscious for several minutes after the first shot struck her, and was shot eight more times. The victims in *Godfrey* did not speak; Joyce said "Please, Stan," arguably pleading for her life. After the killing, Godfrey said nothing at the scene; Stanley laughed and said to Joyce's sister and son, "That's all right. I killed the bitch." Defendant fired nine shots into Joyce; Godfrey only shot each victim once. Godfrey evidently shot his first victim from ambush; Stanley drove back and forth in front of the house where Joyce was visiting her mother. He did this five or six times, arguably causing apprehension to Joyce and her family. I do not find *Godfrey* controlling.

The evidence, when considered in accordance with the rule set out above, supports the following facts and inferences:

　　　1. Joyce was shot nine times with a rifle. From this, it can be reasonably inferred that the killing was unusually brutal.

　　　2. She remained conscious as each shot struck her and for some time thereafter.

3. Joyce bled to death internally.

4. It can be reasonably inferred from these three facts that Joyce suffered both physical and mental pain and anguish before she lapsed into unconsciousness.

5. Before the shooting, Joyce saw defendant drive back and forth in front of the house five or six times. In an effort to get defendant's car license number, Joyce, Sandra, and James went down to the street, and defendant turned the corner into the street they were on. From this, it can be reasonably inferred that Joyce suffered apprehension as to her safety.

6. Joyce was killed in the presence of her family.

7. After the gun was taken from Stanley, he laughed and said, "That's all right. I killed the bitch." From this, it can be reasonably inferred that defendant had no remorse and that the killing was pitiless or conscienceless. It was not until defendant was talking to the officers that he said he "loved his wife."

8. After Sandra said, "Oh God, he's got a gun", Joyce, some ten or twelve feet from defendant, said "Please, Stan." Defendant then shot her. From this, it can be reasonably inferred that Joyce, understanding the danger she was facing, was pleading for her life. It also supports the conclusion that the killing was pitiless or conscienceless.

I cannot find as a matter of law that the evidence is insufficient to submit this issue to the jury for its determination. Joyce's death was not immediate, and the evidence supports the inference that she endured unusual suffering by reason of being shot nine times before she became unconscious. The evidence is sufficient for the jury to find that the killing was excessively brutal, beyond that normally present in a killing, and that it was conscienceless, pitiless, or unnecessarily torturous to Joyce Stanley and therefore especially heinous, atrocious, or cruel. *State v. Pinch, supra,* 306 N.C. 1, 292 S.E. 2d 203, *cert. denied,* 74 L.Ed. 2d 622 (1982). The jury under proper instructions remains free to reject or find the circumstance. *State v. Cherry,* 298 N.C. 86, 257 S.E. 2d 551 (1979), *cert. denied,* 446 U.S. 941 (1980). Certainly, in resolving the question of law as to whether this ag-

gravating circumstance should be submitted to the jury, it is not our province to consider how the jury should have answered the issue. That is the proper function of the jury under proper instructions from the trial court. What the outcome of this case would be on proportionality review is not before us, as we have not reached that stage of the proceedings. The evidence supporting the jury's finding that the murder was especially heinous, atrocious, or cruel goes far beyond mere speculation or conjecture and was properly submitted to the jury.

Justice COPELAND joins in this dissent.